Per curiam delivered by
Kent C. J.
In the cafe of Leavenworth v. Delajield and Dale* decided in this court, in February, 1804, the veííél was captured and carried into port, where ihe was detained four months, and then liberated. It was there held that the wages and provifions of the crew during the detention, were to be brought into a generalav^T- *264 a8e' this cafe the vefiel was forced into port by injuries received at fea, which rendered it neceffary for the general fafety to go into tlie neareft port to repair. The two cafes appear, at firft view, to be fufficiently analogous to admit the application of the fame rule, but there is no direft determination on the' point in the Englilh law. As far however as the queftion has been incidentally noticed, the opinion feems to , have been in favor of the plaintiffs’ claim, in this cafe, to general average for the wages and provifions of the crew during the detention at Norfolk. There were fome nift prius deci-fions before Lord Mansfield which may be confidered as having a remote bearing on this queftion. In the cafe of Fletcher & others v. Poole, tried at the fittings in 1769, the vefiel was forced into Minorca to repair, and, in an aftion againft the infurer on the ihip for wages and provifions expended while Ihe was detained to refit, his lord (hip held that they were never to be allowed againft the infurer, as a charge againft the ihip. Park, 53. But afterwards in the cafe of Late ward v. Curling, in which the fame queftion arofe, Lord Mansfield admitted there 'were exceptions to the rule; as, when it appeared that the expenfe was abfolutely neceffary, and occafioned by fome of the perils mentioned in the policy. Park, 125. Marjhall; 464. This laft cafe has been confidered by the two authors laft cited, and alfo by Buller J. in Da Cofa v. Newnham, as containing an approbation, by Lord Mansfield, of the rule, that if a vefiel went into port to repair from neceffity, thofe expenfes would become general average, I do not think, however, that much, if any reliance ought to be placed on nift prius opinions, fo deftjtute of explicitnefs on this point, and in which the queftion, as to general average, does not appear to have been mentioned ; and the fame remark will apply to what fell from Bul-ler J. in Robertfon v. Ewer, 1 D.&i?. 132. The cafe of Da Cof-ia v. Newnham, 2 D. & F. 407, is however material and important on this fubjeft. In that, the decifion of the court .of K. B. approaches very near to a fanction of the above expenfes as a general average.. It was held, where a ihip 'is obliged to go into port for the benefit of the whole concern, the charges of loading and unloading the cargo, and taking carp, of it, and the wages and provifions of the workmen hired for the repairs, become general average. It was not requifite in that cafe to decide, whether the feamen’s wages and provifions ihould become general average, as the crew had been difcharg-ed 5 but the tvro cafes' are very analogous in principle, and *265 have been fo regarded by Parh and Marjhall. I cannot perceive any found difcmction between them. But Abbott, f. 282,3, ft®tes the queition now under confideration, as ene upon which a reafonable doubt may be entertained, and on which our law books furniih no decifion. He feems rather to intimate his own opinion to be, againft the allowance of the wages and provifions of the crew, although he admits in p, 280, the expenfe of unloading and {hipping fhould be fuftain-ed by general contribution. He fubmits the following diftinction for confideration that if the damage to be repaired, be in itielf an object of contribution, the incidental expenfes ought to be fo, oiherwife not. The opinion of this author is very refpeétable, as he is one of the moil learned, and accurate of the Engliih writers on commercial law. But it is to be ob-ferved he itates the queition as doubtful, and gives no decided opinion, and his diftinction is liable to this objection, that it is repugnant to the rule he had already laid down, that if it be necefiary to unlade the goods in order to repair the veílél, the expenfe of that unlading, warehoufing, &c. go into a general average. Thofe expenfes are certainly as collateral or incidental to the repairs, as the provifions of the crew during that detention, and the wages of the workmen employed are {till more clofely incidental to the repairs, and yet we fee that they are allowed, while the repairs are not.
The queition, upon the whole, maybe confidered as {till open in the Engliih law, but with a pretty evident inclination in the courts, and in rnoit of the writers to apply the rule of contribution to the prefent cafe. The Law Merchant is, however, the general law of commercial nations ; and, where our own pofitive inftitutions and decifions are filent, it is to be expounded by having recourfe to theufages of other nations. This has been the maxim from the time of the Rhodian law to this day.
Ricard, the Amilerdam merchant, fays, that if a ihip is forced by tempefts to go into port to repair, and cannot continue the voyage without hazard to all concerned, the wages- and provifions of the crew, from the day it was determined to-feek the port, to the day of the veiTei’s departure again on the voyage, are to be brought into grofs average. Beawes has adopted this pafíage from Ricard; for he lays down the rule in the fame words, 1 Vol. 161, and it is to be obferved that Bea ives is frequently regarded and cited, in our books, as an authority in the Engliih law. Emsrigon, alfo, 1 Vol. Ó2¡, fays,. *266 ^iai: there is the fame rule in the maritime jurifprudence o£ France ; and it appears from the cafe of Newman v. Cazalet, cited in Park 424, to-be the eftabliihed rule in the commercial court at Pifa. As far then as the foreign writers and *de-are to influence, the rule may be confidered as efta-bliihed in favor of the plaintiffs’ claim. The cafe reported in. the text of the civil law, Dig. 14, 2, 6, and upon which fome of the foreign civilians have eftabliihed their dodtrine, was merely whether the expenfes of the repairs themfelves ihould be made a general average, nauta pro damno conferre debeant, and it was decided they ought not. The prefent decifion will not therefore interfere with this cafe in the civil law. Independent of thefe foreign authorities, I cannot diftinguiih this cafe in principle from that of Leavenworth v. Delafield and Dale. It is equally neceilary in both cafes, that the mariners ihould remain for the purpofe of proceeding to the port of difeharge, as foon as the inevitable misfortune, the cafus fortuitus, creating the delay is removed. The cargo might be facrificed at the intermediate port, if the crew were not to be detained, and the expenfes of their detention being for the common benefit, ought to be apportioned as a common burthen. On the analogy then.between this cafe, and thofe decided in this court, and in England ; on the ground of the foreign decifions, in a cafe appertaining to the commercial law of nations, and on thereafon of the cafe-, as coming within the fpiritofthe rule for contributions, we'ale of opinion for the plaintiffs.
Livingfton J.
This caufe is fubmitted, without argument, on a fuppofition, that it is governed by that of Leavenworth Delafield,* decided in this court in February term, 1804. The two cafes, however, differ greatly.
. We have as yet only faid, that, on a detention after capture, about which there is no diverfity of fentiment among foreign writers, monies expended for provifions" and wages, while the veffel and cargo are reclaiming, ihall be borne ratea-bly by all the parties, whofe property is in, jeopardy. For this we afligned as a reafon, that capture being a misfortune, happening not to the Jhip alone, but alfo to the cargo and freight, and that- without any defedt attributable to the veffel, or fault in her owners, it was reafonable all parties ihould contribute to the coils and charges incident to averting a condemnation, among which thofe for wages and provifions were in-difpenfable. It may alfo be doubted whether in fuch an event the captain be bound to keep the mariners, and whether it be *267 not matter of contradi among the underwriters on thefe feve-ral fubjedts, that expenfes of this kind, which are incurred for the recovery, and not for repairing of the property, íhall form a grofs average. But neither of thefe reafons can apply here. The difafter which compelled the Thomas to bear away for Norfolk, befel the Clip alone. She fprnng a leak, to repair which, fo as to purfue her original voyage, and thus earn freight, ihe went into the neareft port. It is true, it was for the defendant’s benefit that this courfe was adopted in preference to letting the veflcl fink. But this argument, if care be not taken, will prove too much.
If mails or a rudder be carried away in a itorm, or by lightning, it will be for the benefit of all parties concerned that they be replaced, but it was never yet contended that the owner of goods was to bear any part of fuch expenfe. So if a vefiel touch at a port in her voyage, and there be ftruck with lightning, it is as much for the ihipper’s benefit, that ihe be repaired, as if the misfortune had happened at fea, and yet, will it be faid, that in fuch cafes too, thefe charges .íhall be rateably paid ? To prevent this argument, drawn from the benefit which ihippers receive, from miileading us, its application ihould be confined to advantages conferred which do not refult from a previous obligation on the party, from whom they proceed. If they be the effect of contract, or of an antecedent ftipulated reward, as we íhall prefently fee was the cafe here, it is idle to expedí any other remuneration than that which the terms thereof preferibe. In the given cafe, the freight agreed on is all the compenfation the plaintiffs were to receive, and in fettling a fuitable equivalent, they took into the eftimate the very riik and expenfe, a part of which, they now claim of the defendants. The detention of a crew after capture, may emphatically, and in the fenfe above mentioned, be confidered as for the common benefit, becaufe a technical total lofs having happened, there is no further duty to keep them. They may be difmiffed without prejudice to the infu-rance, but if thefe plaintiffs had difeharged the feamen, and thus voluntarily broken up the voyage, neither the defendants, nor the affiirers of ihip or freight would have paid them one Culling:
If the maintenance and wages of a crew, under fuch a dif-sficr, be objedts of general contribution, how is this to be reconciled with what is fo clearly the contradi of every owner of a Blip, who takes goods on freight ? Does not every char *268 ter Party> as has already been hinted, contain a covenant that “ he will, at his own coji and charge, keep his .veflel {launch “ and tight, and furnifh her with mariners, provifions, &c. during the whole voyage ?” Does not this engagement oblige him not only to provide a good veflel at the commencement of the voyage, but, if poflible, to repair her as often as may be neceflary, and to bear all the expenfes occafioned thereby ? Why then are thefe expenfes to be feparated ? If by the charter party, the owners of the ihip have agreed to pay the whole, what right has he to aik any part of them from the merchant ? And if any, .why one part more than another ? As well might a landlord, who for a certain rent had covenanted to rebuild, after injuries by lightning or other accidents, during the leafe, aik of his tenant, on the pretence of haying done him a fervice, to contribute towards fo much of the expenfe as was occafioned by the wages of1 workmen and their provifions. No perfofi would tamely fubmit to fuch an exaction ; and yet, in what would his cafe differ from that of the defendants, who, on precifely analogous terms, were tenants of the ihip Thomas ?
Again, does not the right to freight, generally /peaking, depend on completing the voyage ? And how can this be done, in'cafe of many accidents, unlefs the veflel flop fómewhere and repair them ? The defendants in this very cafe might have infilled either that the Thomas ihould be repaired, or on the plaintiffs’ finding another ihip, and in cafe of refufal to do either, they might have demanded their goods, as they were under no reftraint, (as in Leavenworth v. Delajield, arifing from capture or other caufe) and have fent them on by another opportunity, without having any thing to do with the wages or provifions, or other expenfes, incident to the repair of every veflel. It is nothing to the ihipper of goods, as it re-fpects the charge he is at in the tranfportation of them, whether the voyage be lengthened by adverfe winds, or by the fpringing of" a leak and going into port. In both cafes the owner of the veflel is put to greater expenfe for wages and pro-vifions ; but in neither is the price of freight increafed, which will become the cafe indirectly and very often, if any part of this additional burthen be to jre borne by him.
This claim, to fay the leaft, is novel in our country, nor has it yet been made with fuccefs in Great Britain, although inftánces of this nature muft occur every day ; never has a ihipper been compelled, in that country, to contribute towards *269 difburfcments of this kind. The fenfe and practice of the mercantile world, muft, therefore, notwithstanding theoretical fpeculations, be againft it, and thefe, in points otherwife doubtful, are entitled to confideration. In England, I un-derftand through a channel, which leaves no doubt of the information being corred, that in a cafe like the prcfent, , thefe expenfes are never brought into a general average. A merchant, if a contrary pradice be introduced, will never be able to calculate, with any certainty, the amount of his freight, nor will he know how to cover himfelf by infurance. There is no hardihip in throwing the whole of thefe expenfes, in ordinary cafes, on the owner of the ihip, and letting him look to his policy on the veffel for repairs put on her, and to his underwriters on the freight, for any extra expenditure for wages, and proviiions, which, being a dedudion from her gains or earnings, ought naturally to be paid by thofe who have underwritten that fubjed. It is heft, where it can be done, and where it does not interfere with certain well known rules, which have been eftabliihed in the cafe of jettifons, and fome other Ioffes, which are voluntarily incurred, for the fake of all, to let every fubjed bear its own lofs. Every man will then know the extent of his liability and ad accordingly. In cafes like the prefent, no injury can arife in Snaking the feparation, while frauds may be pradifed under a contrary rule. On the fmalleft accident the owner, or matter, will be tempted to go into port, nor will he have any great inducement to Ihorten his ftay there, fo long as he be permitted to employ the crew, in repairing the injury (which they will oftentimes be competent to do) and to vidual and pay them at the expenfe of the owner of the cargo, who has relied on his contrad to do all thefe things himfelf.
For thefe reafons, I am for confining a general contribution for extra wages and proviiions, to a cafe of capture, or where a veffel goes into port to avoid an enemy, or where fome other ftep is taken by the matter, without any previous injury to the vejfel alone, evidently for the benefit of the whole, and with the view of efcaping from an impending peril. All thefe cafes reft on the fame principle. No particular accident having happened to the veffel, which it is the owner’s fpecial duty and intereft to repair, there is no reafon why he ihould perfonally bear a heavy lofs, which in moft of the cafes put, is voluntarily incurred, to prevent a general one, greater ftill. Hence it will refult, and perhaps a fafer rule *270 cannot followed, than the one fuggefted by- Abbott, which is, that if the injury to be repaired, be not of itfelf an ob-* jedt of grofs average, (and certainly the flopping of a leak falls not within this defcription) neither ihall any of the incidental or confequential charges become fo. If a iliipper be not obliged to find materials, or carpenters to repair injuries, from tempeft, or ftranding, why íliould he be taxed to pay or viflual the crew ? Obvious as this difficulty be, no writer has hitherto attempted its folution.- A merchant fullers enough by the* detention of his goods. If they come to a falling market, in confequence of a protraction of the voyage, or if damaged, or totally ruined by the fpringing of a leak, he cannot apply to the owner of veffel or freight,' for the fmalleft indemnification. He muft bear the'lofs himfelf, or look to his own infurance.
3. D. E. 407.
But the principle, on which the plaintiffs expect to fuc-ceed, is fuppofed to be in the cafe of Da Cofa v. Newnham„ The crew being difcharged at the place of repair, the question which now occurs was not direCtly agitated, nor was anything- more determined, than that underwriters, on a vefiel, are liable for <c wages and provifions of workmen hired to refit <s her.” This feems a felf-evident propofition, for"as tliefe repaii¿¡ are put on the fubjeEl which they have infured, not only hould they pay for the materials, but for the labor bef-towed on them. To get rid of this refponfibility, it was urged, that the failors being employed for this purpofe, cc they tc were bound to work without a further allowance,” and the court, with all the counfel, admit this would have furniihed a valid defence for underwriters on a ihip, provided it had been true in point of fait; but thofe of the crew, who had been hired after their difcharge, were not regarded as hands belonging to the veffel, but as ordinary workmen. The manner, in which the court and counfel exprefs themfelves, merits attention, and goes a great way in deciding the prefent cbntroverfy in favor of the defendants, if a point not immediately litigated, can be regarded as fettled by any thing which Judges may fay. If thefe wages had been paid to the failors as fuch, the plaintiff’s counfel allowed the defendant would have nothing to do with them. “ But the fait,” fay they, se- is otherxvife. ’ At the time the repairs were going on, ma- ?£ • ny of the perfons indeed, who had' ferved on board the iC ill ip were hired, but it was in the capacity of laborers, and , sf- not of failors? The defendant’s counfel alfo, without de= *271 nying the liability of their client, if thefe men were to be confidered as common workmen, rely altogether on their being feamen, and therefore not entitled to extra pay. Afis-urft Juirice agreed to the law as hated by the defendant’s coun-fel, but not to the fact. “ As to the charge for the Tailors’ e< work, had they remained as fuch,” fays he, “ on board, it e‘ would be fair that a deduBion Jhould be made, but it appears, “ that the crew were difcharged immediately on the ihip’;. “ coming into port, and there is no reafon why they ihould “ not afterwards be employed as laborers,in making therepairs, e< as well as any others.” Is not this, in plain terms, fay-ing that the wages and proviiions of feamen, under a calamity of this kind, cannot fall on the underwriter of a ihip. Bul-len too, although he refers to a paííáge.in Beawes, for the foreign law, on which he gives no opinion, lays bold of the fame diftinction, to make the underwriter liable, “ for” fays be, ££ the crew had been difcharged, and thofe men liad e< been employed as common worhnín.” I have been thus particular in examining this cafe, becaufe it is by fome fup-pofed an authority in favor of the plaintiffs, whereas, according to my underftanding, we find recognized in it, without any qualification, the rule on which the defendants here rely, that the wages and provifions of a crew, during a detention to repair, cannot be brought into a general average. In this view it is a very ftrong cafe in their favor, and fo it has ever appeared to me. But this is not the only Britiih authority of the kind. Lord Mansfield, in the cafe of Fletcher'and others v. Poole, declared, that wages and provi-lions, expended while a Ihip is refitting, after a ftorm, could never be allowed againft an infurer on the veffel. Much left then can they be demanded of an owner or underwriter on goods. Bailor too, on a-trial before him, ruled, that a charge for wages and proviiions, during a detention like the prefent, could not be recovered on a policy on the Jhip and goods, but that the freight alone was liable for it.
g;tt¡ng„ aftc.. Eaft.1769.Park Ja'
Eden v. Poole, Sitt. after Hill. 127.
It is alfo fettled in Pobertfon v. Ewer, that the expenfe, of wages and provifions, occafioned by an embargo, which is a ■ftronger cafe than this, cannot be recovered on a policy on the Jhip. This cafe is cited, although it be that of an embargo, for the purpofe of quoting what fell from Mr. Jufticc Buller, and which applies ftrongly, and immediately, to the point before us. “ If,” fays he, “ the ihip had beendetain-(i ed in cpnfequence of an injury received in a form, though *272 “ t^ie underwriters mail have made good the damages, yet “ the iuhired could not have claimed the amount of wages “ or provifions, during the time Jpent in repairing. The court,’* he proceeds, “ only look to the fubjeEl matter of the infu-ranee. Here the ihip was fafe, and the wages and provi- “ fions are no part of the thing infured.’’ It will at once be perceived that this reafoning applies with double force againft rendering an owner of goods, or their underwriters, liable for expenfes of this kind.
1V0I. 614.
tVoI, 6z5„
If there be any foreign author, who thinks differently, his dictum will not be found to be fupported by the belt and more ancient writers on the law of infurance. Enter igon, after enquiring “ whether the expenfes of repair and eentinu- “ ing in port to refit, after an accident of this kind, are to <c make a general average ?” informs us, that the Rhodian law decided in the negative, and then cites * many celebrated authors, who approve of, and adopt this decifion. The reafon they alfisn is, <£ that fuch expenfes are -incurred for r , —. r , the purpole of enabling the vefiel to purlue her voyage, <£ rather than with a view of preferving the merchandize.”
The fame principle, fays this profound lawyer, fee ms to have dictated "the eleventh article, refpefling freight, which obliges “ a ihipper to wait, while a veffel is repairing, or to <£ pay freight,’’ but the ordinance does not, he continues, require him to contribute to the expenfes of refitting, or tliofe caifed thereby. The fame decifion, he adds, is to be found in the laws of Oleron.
Thus far there appears but one opinion among elementary writers, for although they make no particular mention of wages and provifions, it is evident, from other exprefiions, they mu ft have included them in the exemption, to which an owner of goods was entitled. Being a charge, as much arifing, out of the peril encountered, as any other, they could perceive no reafon for a diftinction, the merit of which is, perhaps, exclufively due to Ricard, who is mentioned by Emerigon, as the JirJl who undertook to differ from all the authors whom he had juft named. He then cites his opinion, which no fubfequent writer has ventured to approve in its whole extent, for the repairs of a ihip, after a ftorm, are by him brought into general average, as well as feamen’s pay and provifions. In truth he excepts nothing, but includes every expenfe occafioned by the difafter. Indeed if he be right in throwing any one of thefe items into a general average, he *273 muit, probably, be fo throughout. For why ihall the pay of the crew be a general, while the wages of the workmen are a particular average ? Or why ihall the provifions of the former fall under one defcription of averages, and thofe of laborers under another ? Or why muit the coit of a mait be borne the owner himfelf, or his underwriter, while the charge of keeping the failors, while it is putting in, muit be divided between freight, fhip, and cargo ?
Ricard, no doubt, found it difficult to make a diftinclion, and therefore determined not to diffier by halves from the ju-rifts who had preceded him. As he is perhaps the only writer, (for Beanies only copies whát he fays,) who is found to maintain this doítrine, I ihall be excufed for adhering to an opinion which is certainly fandtioned by far the greater part of thofe who have left us their fentiments on the fubject. This will appear to be the cafe to any one who will be at the trouble of confulting Emerigon, who, it is proper to obferve here, admits that the praétice of the French courts of admiralty, contrary, however, to the civil jurifprudence of the country, conforms to the opinion of Ricard as far only as re-fpedts the expenfes of unloading and reloading, and the wages and provifions of the crew.
Another argument again!! making thefe expenfes a matter of general affefiment, arifes from the extreme difficulty and embarralfment which muft ever attend the adjuftment and collection of them. To value the vefiel, freight, and goods, fo as to do juftice, is never an eafy talk. In the cafe of a general fhip, and fifty or more ihippers, as may well happen, what trouble, will not the owner have, to difeover the juft value of every man’s intereft, and what difputes, vexation, and delay, muft he fubanit to, before he receives one half that is due to him ? To recover one hundred dollars for wages and provifions, he may have to look to as many ihippers, and have a controverfy with.'every one. All this may be avoided by making thefe expenfes, as naturally they are, a particular average.
My apology for the length of this opinion will be found in the importance of the queftion, than which few cari occur more interefting to the mercantile world. I fincerely hope that the inconveniencies, which are apprehended from a practice under the rule, which it has been thought fit to adopt, may exift in imagination only.
Upon the whole, as the injury which happened here was *274 not in itfelf an object of general contribution ; as the plain'tiffs were under contrail to repair, vidlual,and man, their vefi* fel, throughout the voyage, or lofe their freight ; as the defendants received no benefit, but what the plaintiffs were under pofitive ftipulation to confer ; as their own and not the common intereft, was the foie object ; and as a contrary rule may produce great inequality, embarraffment, and delay, my opinion is, that the charge for thefe extra wages and pro-viiions, is a particular average, to be borne by the freight only, and that, therefore, the defendants ought to have judgment.

 1 Vol. 575-

 ’iN.y.T-8. 57-3-

 Faber, Vinni-Kiíricke, Loe-cenms, Devicq, Koccus & Mar-quardus.