Jones, C. J.
The leading questions in this cause are, whether the damage to the defendant’s goods in the lighter, was an item chargeable upon the cargo for general average, and whether the adjustment of the average at Mobile is conclusive.
It appears that the brig, on her voyage to Mobile, and after she had taken a pilot to conduct her in, and had crossed the bar, ran on shore near Mobile Point, and for the purpose of lightening her, so as to put her afloat, the master caused the whole cargo to be taken out of her, and put into smaller vessels and lighters, and sent on to Mobile, the port of destination ; and the expenses attending that transportation from the brig to the port, is one of the subjects of the general average, to which the cargo was made to contribute. Of that charge, no complaint is made. But the goods of the defendant, who was a principal shipper, received damage while in the lighters, and were sold by him at auction, for the purpose of ascertaining the amount of the loss; and that loss was also brought into the general average, and is the objectionable item.
The interests which were made contributory, were the freight for the whole amount, and the cargo at the invoice value. Bu t the brig, after she was afloat, and in proceeding up the bay, encountered a storm, by which she was wrecked and lost. No part of the average is charged upon her. The plaintiff, who was one of the shippers, was compelled to pay the contribution assessed upon his shipment, before he could obtain his goods, and has brought this action to recover back the sum he was thus coerced to pay, as having been wrongfully extorted from him.
It is conceded, that the voluntary and deliberate sacrifice or exposure of goods to relieve and rescue the ship and cargo from present jeopardy or impending peril, when the safety of the whole is effected by the act, entitles the owner of the property sacrificed or exposed, to a rateable contribution from those who are benefited by the result. But it is contended, that in this case, the damage to the defendant’s goods in the lighter, was not the immediate *437 and direct consequence of the exposure for the general safety, but is to be ascribed to the subsequent perils of the navigation in the lighter, and therefore too remotely connected with the lightening of the brig, to be a just subject of contribution; and it is further objected, that the object of the exposure, the safety of the brig, was not effected; and on that ground the claim to a general contribution was untenable.
It is a settled rule of the Marine law, that if goods be put into boats or lighters to float the ship when aground, and the boat be lost, it shall be regarded as a jettison, and the remaining property must contribute to the loss, because the lightening of the ship was a voluntary and deliberate act, and done for the benefit of the whole. [Steph. on average. p. 15 and authorities there cited.] And if the total and entire loss of the goods in the lighter, entitles the owner to contribution, his claim to recompense, for the damage they sustain in that exposed condition, must have an equal title to respect.
It can make no difference that the stranding was at the entrance of the port of destination, and that the goods were sent in the lighters from the ship to the port. She was upon her voyage and in iminent danger of being lost; the only expedient that remained for her safety, and the safety of the cargo was to lighten her by unlading her; the change of the cargo from the ship to the boat became indispensable; that was the service rendered by the exposure of the goods, and if it accomplished the purpose intended, the loss incurred by the goods in accomplishing it, ought to be borne by all who participated in the benefit. The distinction is between the case of a stranding, which exposes the vessel to the imminent" danger of shipwreck, and the voluntary removal of the goods from her by the master, to boats or lighters for the purpose of averting the peril and rescuing the whole ship and cargo from jeopardy, and the case where the vessel is lightened for the purpose of floating her, when she casually strands, and where the operation is in the ordinary course of the voyage for the purpose of discharging part of the cargo on the outside of the bar, because the ship draws too much water to cross it with a full loading on board. A loss or damage in the lighter employed in *438 the latter case in so discharging or lightening the ship for the purpose of enabling her to cross the bar, must be borne by the owners, and would not be a subject of general average, because it is not an operation for the relief of the ship and cargo from any impending peril; and in the first class of cases where the danger of shipwreck impends, it is because the goods are taken out for the purpose of floating the ship when stranded, and thus delivering both ship and cargo from their perilous situation, thatthelos s or damage to the goods in the lighter in such case is a subject of contribution.
Marshall in his treatise, refers to 1 Mag. 56., and Malyne 109 & 10, to show that according to their exposition of the Marine law, if the ship upon her arrival at the mouth of a river or harbor, be found too deeply laden.to get over a b ar, or to sail up, and the master to lighten her puts part of her cargo into lighters and those lighters are lost, the owners of the ship and the remaining goods shall contribute to the loss because the removal of part of the cargo from the ship to the lighters was for the general benefit. But an exception is stated by Pothier to the rule which is that goods removed from the ship to enable her to enter her port of destination and lost in lighters, are not the subject of average contribution; and the exception seems reasonable, for he correctly imputes it as a fault to the master who ought to know the capacity of the port to which be is bound, and not load his ship too heavily, and thereby induce the necessity of lightening her. But this exception atfirms the rule, and shows that losses or damage to goods taken from the hold of the ship, and exposed in lighters for the purpose of floating a ship which has grounded by accident, is a legitimate subject of contribution.
The case of Whitteridge v. Norris, [6 Mass. 125.] is not in hostility with these principles. The point upon which it turned, was the absence of all intent to aid or benefit the ship or the residue of the cargo by the removal of the keg of dollars which was lost, from the ship into the boat. In that case the ship when under the charge of a pilot in Bengal bay, struck the ground and was thought to be in imminent danger of perishing. The master and crew impelled by their fears for their own safety, and acting by the advice , of the pilot took to the boats and forsook the ship, *439 they attempted to save some of the lading, and put part of the kegs and bags of specie in the long boat, but finding her overloaded, and the sea running high, were obliged to throw most of the goods overboard for the preservation of their lives and to keep her free until they could reach the shore. The ship, however, survived the disaster, but the claim to an average contribution, was resisted and overruled on the ground that the master and crew in taking to the boats with the specie, acted with no intent or purpose directed to the preservation of the ship, which was considered as lost, deserted in despair and left to her fate; and that the exposure in the boats, though an extraordinary peril was unforeseen and the danger not voluntarily incurred with any view to the common benefit, and did not contribute to the eventual safety of the ship and cargo, which were iti no degree the result of the dereliction of the vessel by the crew. And it was held that the goods saved in the long boat by the jettison from it, were not liable to contribute to the loss of the specie because they were thus exposed together in consequence of a previous peril, and for the sole purpose of saving what could be saved without any concert of the parties interested or common benefit intended. That the intention of the jettison was the safety and preservation of the lives of the passengers and crew of the boat, and that the loss of the specie thrown overboard was incurred in the attempt to save it from the peril of shipwreck in the ship, and without any regard to the ultimate safety of the ship or the other effects taken with it, for the same purpose into the long boat, and therefore formed no case for contribution or damage. But the Judge who delivered the opinion of the court, fully admitted the principle that any loss or exposure voluntarily incurred in the preservation of the vessel and her lading, and with that view, is to be home by those who partake of the common benefit conferred by contribution in general average ; and that goods exposed in a boat from which they are lost came within the principle.
That case then instead of militating against the defendant, so far as it has a bearing upon the point is favorable to him. The case of Grey and others v. Waln, [2 Sergt. & Rawle. 239.,] decided that a vessel lost by voluntary stranding to avoid capture, was to be paid for by contribution in general average.
*440 The Supreme Court of this state, however, in the case of Bradhurst and Field v. The Col. Ins. Co. [9 John. 9.] in reference to the circumstances of that case, held, that where the vessel is lost by voluntary stranding, the rescued cargo, though saved by her saorifice, is not to be burdened with contribution for her loss. It is not now necessary to examine how far the two cases are in conflict, or maybe reconciled; for the Supreme Court of this state in their decisions admit, that when the ship is voluntarily run ashore for the safety of the adventure, and is afterwards floated and resumes her voyage, the damage resulting from the sacrifice is to be borne as general average. It is a general principle which runs through all the cases, and has the sanction of all the courts, that the sacrifice made by the common agent of the whole or a part of the goods of some of the shippers, for the rescue of the whole interest from a peril which threatens the destruction of all, entitles the sufferers to contribution to the loss from those who benefit by the sacrifice thus made for the common welfare. And any private loss or damage which falls within that principle, and is purposely incurred for the general safety, is entitled to the benefit of the rule of contribution wherever the parties called upon to contribute have profited by the sacrifice.
On the same principle, where a ship having sprung a leak, a part of the cargo was taken out to lighten her, and to discover and stop the leak, which was put on board of another vessel, and lost by capture; but the leak in the first ship was repaired, and she enabled to proceed on her voyage, and finally reached her port of, destination. The goods lost by the capture were contributed for in general average. [1 Mag. 160.] So in Maggrath v. Church, [1 Cains, 214.] where in cutting away a mast, it splintered between the partners, and made an opening which let the water into the hold, and damaged the cargo, the damage was held a subject of average. But the right to retribution, and the obligation to contribute must concur to render the claim of the sufferer complete. He whose property is saved by the loss of the property of another intentionally sacrificed for that purpose by a common agent, is bound by every *441 moral as well as legal obligation to contribute to a just average indemnity for that loss which was incurred for his benefit, and has enured to his advantage. But no obligation results from a loss or exposure which conduces to another’s benefit, but was not designed or intended to subserve the general interest by averting a common danger. Nor can a party be required to requite a benefit which was intended tobe conferred, but which has been disappointed by the result. If these be the principles of the rule of contribution, this case, assuming the sacrifice to have been successful, must come within it; for the damage to the defendant’s goods was the consequence of the removal of them from the brig to the lighter, which was the act of the master as the common agent for the preservation of the vessel and cargo from the greater and more imminent peril which impended from the stranding of the brig.
Then, did the transfer of the goods from the brig to the lighters, in which they received the damage, occasioned by the exposure, effect the rescue of the vessel and cargo from the peril it was designed to avert 1 The master testifies to the fact, that the brig went on shore at Mobile Point, on the 11 th, and continued aground until the 18 th of the month of January; that the cargo was taken out to lighten her; that after she was unloaded she floated, and that he, on the 19th of the month, endeavoured to take her up to Mobile; but after proceeding about eight miles up the bay, she was driven back by a gale, and struck on Dauphin Island, where she was condemned by the wardens of the port and abandoned. The vessel and cargo were relieved, therefore, from the peril they were in by the stranding at Mobile Point, and the cargo reached its destination, but the brig was eventually lost by a new peril. That loss, however, happening after the peril was over which had first put the vessel and cargo in jeopardy, and not being voluntarily incurred for the benefit of the cargo, nor conducing to its safety, was not made the subject of an average contribution. But the damage to the defendant’s goods resulting from the exposure of them, to relieve the vessel and cargo from the first peril, and from which they were effectually rescued, was brought into average: and the plaintiff now «> *442 sists that he was not liable to contribution for that loss, because the ship afterwards perished before the voyage was ended.
It is conceded to be a general rule, that contribution is not due for a jettison, or for damage from the exposure of part of the cargo, unless the ship and remaining cargo have been rescued from the peril to which they were exposed ; but it is a mistake to suppose that the ship must pursue her voyage, or arrive at some port in safety, to entitle the party whose goods have been sacrificed to contribution for the loss. If indeed the ship, after the jettison, perishes in the same storm, the rule applies, and there shall be no contribution for the goods that may be saved to the owners of those that were thrown overboard, because the object of the sacrifice, which was the safety of the ship from the storm, was not attained. But if the ship escape the peril which the jettison was intended to eschew, and is afterwards lost by another accidentor disaster, the effects saved from the last disaster shall contribute to the loss or damage incurred in averting the first peril, because that sacrifice once saved them from danger. [Marshall, 537.]
Phillips states the rule to be, that if the impending peril, on account of which the jettison is made, is averted, what is finally saved must contribute to the loss; but being for the common safety, contribution is to be made only as far as the common safety is secured. [Phillips, 342.] Pothier, treating on this point, assumes as the settled rule, that a loss occasioned by jettison, or a sale of part of the cargo at an intermediate port, to enable the ship to proceed on the voyage, is a subject of restitution, whether the ship afterwards arrives at the port of destination, or is disabled by a new accident from proceeding, and discharges at a port of necessity. He holds, that the estimate of the indemnity should be the price of merchandize of the same quality with those that were sacrificed at the place of the ship’s discharge, where the contribution is to be regulated, and that such place of discharge is either the port of destination, when she arrives there, or the port at which she is obliged to discharge, when by a new accident happening after the jettison, she has been so disabled as to be unable to proceed further, or pursue the residue of the voyage. [2 Poth. 414. 128.] And Stevens, in his Treatise an Average, collects a similar rule from the writers on marl- *443 time law. He explicitly states the principle to be, that if on the jettison being made, the ship survives the storm, and continues on the voyage, but shall be afterwards wrecked, what is saved from such wreck must contribute to make good the jettison. [Stevens, 14 and the books there cited.]
These opinions of foreign writers on maritime law, are of great weight and approved authority, and their doctrines on subjects of such general concernment, are consulted by jurists, and not unfrequently form rules of law in our own courts, and govern our judicial decisions. I have found no adjudication either in England or in this state, impairing or drawing in question the principles of average contribution, to which I have adverted as deduce-able from them; but the opinions of our own jurists, so far as they have been expressed, confirm and apply them. The rule of salvage in the case of the wreck of the ship off the port of destination, where the cargo is saved and delivered to the consignees, conforms to those principles; for in such case the freight is made to contribute to the expense of saving the goods. Lord Kaim selects that rule as an example to illustrate one of his maxims of equity. The proprietor of the goods, and the owner of the ship, he observes, are in such cases connected by a common interest; the recovery of the goods from the shipwreck was beneficial to both parties; to the freighter, because it restored to him his goods, and to the owner of the ship, because it gave him a claim for freight: and for that reason the salvage ought to be paid by both in proportion to the benefit received. [Kaim’s Pr. of Eq. B. 1. p. 1. C. III. sec. 2. art. 2.]
In the case of Heyliger v. New-York Firemen Insurance Company, [11 John. 85. ] the schooner success bound to the port of New-York, being on shore near the entrance of the port and in a perilous situation, it was agreed between the consignees and agent of the owners of - the vessel and cargo and the insurers of those interests, that immediate means should be taken to save the vessel and cargo if practicable, and in case the vessel was lost, to bring the cargo to New-York, and that the measures so taken, should be without prejudice to the right of either party; the vessel was wrecked and totally lost, hut the cargo was saved and brought up in lighters to New-York, and delivered free of damage *444 to the consignees who paid the charges and thenVcalled on the defendants as insurers on caigo to contribute their proportional part of the expense as general average; they repelled the claim, insisting that the expense of the lighterage and forwarding the cargo to its place of destination was a charge upon the ship-owners solely, and payable out of the freight which they were enabled thereby to earn ; but the. court adjudged the claim tobe just and legal, the materialsof theship, the freight and the cargo were made to contribute to the charge on the principles of general average.
In strictness, that was a case of salvage and not eo nomine an average loss ; the stranding was a disaster which befel the ship from accident, and was not an act of volition, nor was there any sacrifice or exposure of any portion of the common adventure entrusted to the charge and management of the master, for the common safety or benefit of all the interests in jeopardy. But in its leading features and practical results it was very analogous to that. species of general average which is now before us? and the reasonable and just rules applicable to average contribution were applied to it by the court; and if the expenses incurred in saving the cargo from the wreck, when the stranding was not a sacrifice for the general safety and the vessel was totally lost, were a legitimate charge upon that cargo in common with the freight and the materials of the wreck, on the principle, of a joint and common benefit conferred by those expenditures upon the whole, surely the expenses and damages resulting from the removal of goods from the vessel to lighters, and the greater exposure of the goods in the lighters for the purpose of rescuing the vessel and cargo from peril, must have as strong a claim to contribution from the cargo and freight which participated so largely in the benefit of that removal and exposure of the goods that were damaged.
In that case stress was laid upon the agreement of the parties, to attempt the deliverance of the vessel and cargo from the perils that surrounded them, which was relied upon by the counsel as constituting a casus foederis which distinguished it from the common case of the transportation of the goods from the wreck to the port of destination in a substituted vessel and gave it the impress of a case of average and contribution; and the reasoning of the court is based upon that distinction.
*445 In the case before us, the implied consent and agreement arising out of the contract of affreightment, and which is the foundation of the law of average contribution, made a casus foederis of equal obligation upon the parties, and required that in the event of a common danger, averted by the timely and voluntary sacrifice or exposure of any portion of the property in jeopardy, for the safety of all those who should participate in the benefit, should contribute to the indemnity of those who should suffer in effecting the rescue and safety of the whole from the peril. It would be strange that this right of the sufferer to indemnity, which on the success of the effort to save the adventure from the peril, had become perfect, should be divested, and the parties who reaped the fruit of the sacrifice discharged from the obligation to indemnify, by the subsequent loss of the ship by a new disaster. The right- to contribution cannot depend on the arrival of the ship at the port of destination, any more than it can upon the delivery of the cargo saved from the peril by the sacrifice, to the consignees. If the ship or any portion of the cargo be lost by anew accident, the owners of what was so lost cannot be made contributory in respect of it, to the indemnity of those who suffered by the sacrifice for the safety of those goods from the previous peril.
But the exception does not extend beyond the vessel or goods so lost by the subsequent peril, all the property which is saved from that peril and ultimately comes to the use of the proprietors, continues liable to its just contribution in general average to the loss incurred, or its rescue from its first jeopardy: I can discover no principle therefore which could entitle the plaintiff to recover back any part of the average contribution he has paid, even if his clain could be viewed as an open question, the disputed item of damages to the goods in the lighters, in the views I have taken of it, would by our own laws, be an average loss, and the rules applied in adjusting the average at Mobile were not in collision with our own.
But I do not consider the point, as an open question. The adjustment made at Mobile is in my opinion conclusive. The case of Lenox v. The United, Insurance Company, [3 Johns. Cases, 178.] was relied upon as showing that a foreign adjustment of an average loss is not conclusive upon the parties. That was the *446 case of a jettison of cargo laden on deck, which had been brought into general average by a foreign adjustment at Lisbon, and the general average paid by the assured, who claimed an indemnity for it from the insurers. The question was whether the sum paid in general average for the goods on deck was recoverable. The court decided that it was not, and held that the adjustment at Lisbon did not conclude the parties. The reason they gave for the opinion was that the parties to the contract of insurance must be considered as having in view the law of this state, and must be governed by it. But is that reason satisfactory ? The grounds upon which the foreign adjustment is held conclusive are that it is the duty of the master to cause the adjustment to be made, and to see to the settlement of the averages: and that the parties are compellable to submit to the assessments upon them that may be coerced by suit or by the detention of the goods to pay the contributions as settled there, and if the adjustment could be opened at the home port and a new rule of apportionment be applied, great and manifest injustice must often be done to some of the parties without any remedy for the wrong done them by the derangement.
But I consider that part of the case as overruled by subsequent decisions. In the case of Strong & Havens v. The N. Y. Firemen Ins. Co. [11 John. 323.] the cargo was estimated in the adjustment of the average at the market price in Lisbon, the port of destination, where the contribution was settled, which not being conformable to the rule of adjustment in this state, as established by the case of Leavenworth v. Delafield, [1 Cains, 573.] the defendants insisted that they were not bound by the adjustment at Lisbon, and were liable only for the proportion of general average, to be settled according to the rules adopted here. But the court, after reviewing all the cases, held the adjustment to be conclusive, on the ground that a settlement of the general average at the foreign port, when fairly made according to the laws of the country to which the port belongs, is binding upon the parties, and that it is the duty of the master to cause an adjustment to be made on his arrival at the port of destination, and to enforce the payment of the contribution, and that he has a lien upon the cargo for its proportion.
*447 1 cannot distinguish this case from that, The master here re- ° . . fused to deliver the cargo until the average contributions were tisfied. There is no pretence that the average was not fairly set-tied according to the laws and usages which prevail at Mobile, the intendment is, that it was, and it must, I think, be, binding upon all the shippers.
The court, in the case last cited, do not, it is true, in terms overrule the decision" in Lenox v. The United Ins. Co.; but they do not give it their sanction. The only notice taken of it by the learned and able Judge who gave the opinion of the court, is, that the decision there was against the recovery of the general average, on the ground that the jettison could not by our law be brought into an average loss, but that the effect of the adjustment, if the jettison had, according to the laws of this country, been a proper item in making it up, is not determined. This was indeed a nice shade of difference. In the case in which that decision was reviewed, the adjustment was not conformable to the rule judicially established in this state for the adjustment of average contributions. And it is difficult to perceive a reason for distinguishing between a foreign adjustment which deviates from our laws, in the estimate of the subjects properly made contributory, and one which includes indemnities for subjects that our laws would reject. Each operates to impose charges upon the parties to which they would not be liable on an adjustment of the average in this country, and the principles on which the court place the last decision, equally require that the foreign adjustment should in both cases be conclusive. But the two modern cases of Newman v. Cazalet, and Walpole v. Ewer, to w hich the Judge refers, as upholding his principles, were upon foreign adjustments, which embraced subjects excluded by the English rules. In the first case, which was an adjustment by the Consular Court of Pisa, several items were charged, which, according to the English usage, would not have been allowed. And in the other case, the holders of a respondentia bond had been compelled to contribute to the average loss; and Lord Kenyon held the underwriters bound for the amount of the contribution, notwithstanding that by the laws of England, the lender on respondentia is not lia *448 ble to average losses.' Those cases, so irreconcileable with the dis-between objectionable subjects brought into foreign averageg ancj exceptionable rules for the adjustment of the contributions to legitimate subjects of average loss, are cited by the learned Judge as illustrating and confirming his sense of the principle that foreign adjustments, when fairly made, are conclusive; and he understands that to be the rule to which the courts of this state are to conform: we must take the rule, he observes, as we find it, and leave any amelioration of which it may admit to another department of the government.
The case of Depau v. The Ocean Ins. Co. [5 Cowen, 63.] fully confirms that construction of the rule. In that case, the previous casé of Strong v. The N. Y. Firemen Ins. Co. was cited by the court as deciding that, when a general average is fairly settled in a foreign port, and the insured is obliged to pay his proportion of it, he may recover the amount from the insurers, though the average may have been settled differently abroad from what it would have been at the home port. And on the authority of that case, the court held that the averages then in question, which had been settled at Rotterdam, the port of destination, must govern. One of the objections to those adjustments was, that certain cables procured at Halifax, a port of necessity, in the course of the voyage, and which were' not chargeable as an average loss, were improperly brought into the average and allowed: yet the court held, that the adjustment could not be opened for that cause, but must govern. In that case too, a distinction was suggested between adjustment at the port of destination, and at a port of necessity., and it was contended by counsel that an adjustment at the port of necessity being indispensable, would conclude the parties, but if made at the port of destination, was not conclusive, unless shown to be called for and made compulsory upon the master; but the distinction was disregarded by the court. Must not that case govern this ? The adjustment in this case was made at the port of destination, but which, for all the purposes of this average was a port of necessity, for the loss occurred at that port, and was there adjusted. And if the damage to the defendant’s goods would have been disallowed on the settlement *449 of the average here,'yet the allowance of it there can no more be made the ground for opening this adjustment, than the allowance for the cables in the case of Depaw could upon the adjustment in that case.
The cases I have cited were between the merchant and the insurers, but the same rule applies to the relation of ship-owner and freighter. In the case of Leavenworth v. Delafield, where the court establish rules for themselves for the valuation of the different interests to be brought in to average and made contributory to the loss, they apply them to the original owners of those interests, and conclude with the direction that the same course of- adjustment must be pursued between underwriters; showing the opinion of the court that the same rales and principles are applicable to adj usunent between the ship-owner and shipper as between the merchant and insurer; and in the case of Walden v. Le Roy, [2 Caines 263.] the court held that the person entitled to contribution may recover "from the person liable to contribute, and he from his insurer. In most cases of foreign adjustment, the averages are from necessity settled and paid by the parties who are to contribute, without reference to the question of insurance. It would be against the principle and true spirit of the rule to allow the contributory parties who are uninsured to open the adjustment, and tó hold it conclusive upon those whose interests are insured, and upon their underwriters. There can be no solid ground for the distinction: the adjustment must be equally conclusive upon all the persons and interests actually brought ito the settlement of the average,
Oakley J.,
after stating the facts.
The first point to be determined is, whether this is a case for general average at all.
The principle upon which a general average depends is well established. When expenses are incurred or sacrifices made voluntarily, on account of ship, freight and cargo, and with a .view to the common safety of all, a general contribution must take place provided .the purpose for which the expense was incurred or the sacrifice made is answered. [Phil. on Insurance, 331. 334. Con. Marsh. 536-7-] In the present case, the vessel, freight and cargo *450 were exposed to a common peril ;• all were relieved from the impending danger by the.shipping of the-cargo on board the lighters and its transportation to Mobile. The goods were saved, the freight earned, and the vessel put afloat in safety, and on her way to her port of destination uninjured. She was subsequently Iqst by a new peril in no way connected with the first stranding. This cannot affect the question of general average as to the expense or loss incurred in consequence of the first. peril. That was ended and the purpose for which the sacrifice was made was fully aswered. [Phil. 342. 343. and the cases there cited, Con. Mar. 537.] This case -then seems to be clearly within the general principle above stated. I have not deemed it necessary to enter into an examination of the question whether the adjustment of the general average at Mobile is conclusive upon the parties in this cause ; because I am-satisfied that it-was in fact made upon principles sanctioned by the law of-this state and that the damage sustained by the defendant’s goods while on board the lighters was properly taken into the estimation of loss.-
In Con. Marsh. 538, it is laid down, -that if a ship, upon her arrival at the mouth of a river or harbour, be found too deeply laden to get over a bar, or to sail up, and the captain, to lighten her, put part of her cargo into lighters, and those lighters are lost, the owner of the ship and the other parts of the cargo shall contribute. This appears a reasonable doctrine. The loss happened directly in consequence of the act resorted to for the general benefit and safety. In the present case, if the lighters, on board of which the goods were shipped, had remained with the stranded vessel, and had been- lost, or if the goods of the defendant, in the act of being put on board the lighters, had been by accident dropped into the sea and lost, or partially injured,-, there can be no question, that within the principle above stated, it would have formed a Subject of general average. It is not perceived that the transporting of the goods to Mobile, and their sustaining a partial injury only on their way thither, can make any difference in the application of .the rule. Shipping the cargo on board of other vessels, and sending it to the port of destination, then near at hand* was one entire act, resulting from the original design to re *451 lieve the ship from her perilous situation. The vessel was not abandoned, but in part preserved from the danger to which she was exposed, and afterwards actually proceeded towards her destined port. The vessel, freight and cargo all derived security from the exposure of the defendant’s goods in the lighters. The purpose for which such exposure was made, was fully answered; and I see no reason why they should not all contribute to indemnify the defendant for any loss, which was the direct consequence of such exposure.
The case of Whitteridge v. Norris, [6 Mass. 182.] which was considered on the argument as analagous to the present, differs from it in the material fact, that in that case the vessel was abandoned by her crew while viewed as a wreck. The property- taken into the boat in which they escaped, was not put there with the intent to contribute to the safety of the vessel, or the remaining cargo; and though the vessel was afterwards saved, the court held there should be no contribution, on the ground, that the property lost was not exposed to hazard with any view to the preservation of the ship; nor. did such exposure in any manner contribute to such preservation. I am of opinion that the defendant is entitled to judgment.

Judgment for the defendant.

[A. L. McDonald, Att’y for the plff. E. Anthon, Att’y for the defts.)
,'N'ote.—Mr. Benecke, in his “ Principles of Indemnity in Marine Insurance,’ has treated this subject with much learning, in his fifth and seventh chapters. He seems to qualify the rule, “ that the loss occasioned by jettison is to be borne “ by the whole, only in those cases where the preservation intended has actually “ been accomplished." He says, (p. 180.) “If nothing be saved, the owner of the “ goods thrown overboard can have no claim upon the owner of the other goods lost; “ because he loses nothing by the jettison, but what would also have been lost “ without it, since his goods, had they remained in the ship, would have shared the “ fate of the rest. But if some goods be saved, the proprietor of the sacrificed goods “ is entitled to a compensation.” This proposition, he says, is confirmed by the opinion of Weijlsen, who expresses himself in the following manner: (§. 33.) “If *452 “ a vessel should be in danger, and after goods have been sacrificed in order to “ lighten her, should nevertheless be wrecked, the goods saved or fished up must “ contribute for the jettison, because it has been resorted to with a view to save “ the ship and the rest pf the goods, and because if those goods had not been sa„- “ crificed, their owner might have saved or recovered them all, or in part, as the “ other owners have done, but of which possibility he was deprived by the jettison.” Again, (p. 209.) “ When a part of the cargo is shipped over into lighters, or the “ long boat, in order to extricate the ship and cargo from a perilous situation, as for “ instance, to set a stranded vessel afloat, or to lighten a leaky one, and bring her “ into harbour, the charges of such a measure, as well -as the damage sustained by “ the goods in consequence of it, undoubtedly belong to general average.” [See also Kent's Com. vol. III. p. 185 to 196.]