## THORNTON *vs.* THE U. S. INSURANCE COMPANY.

Where a ship, bound from R. to B., was compelled to put into an intermediate port, for the preservation of the ship, cargo, and lives of the crew, the wages and victualling of the crew, from the time of the ship's bearing away for such intermediate port until her departure therefrom, were held to constitute a proper subject of general average.

In an action on a policy of insurance, by the owner of a ship against the underwriters, the adjustment of a general average loss made in a foreign port, is not conclusive upon the owner; but he may show, that items of loss were omitted in such adjustment, which by the laws of this country, where the contract was entered into, should have been included.

THIS was an action of *assumpsit*, on a policy of insurance upon one half of the ship *Mordecai*, and was tried before the Chief Justice, in this county, *September* term, 1834.

The plaintiff claimed to recover for losses under both general and particular average.

It appeared in evidence, that on the voyage from *Richmond* to *Bremen*, the ship was compelled to go into *Cuxhaven*, an intermediate port, for the safety of the ship, cargo, and lives of the men. While there, an adjustment of the general average took place, but in which no notice was taken of the wages and victualling of the crew, from the time the ship bore away for the intermediate port, until her departure therefrom. This item the plaintiff now claimed to recover, under general average. But the Chief Justice ruled, that the foreign adjustment could not now be opened, — that it was conclusive and binding upon all the parties — and the verdict of the jury was returned in conformity thereto.

Other questions were raised in regard to the partial loss, but as no decision of the Court was had thereon, the facts are not reported.

The questions being reserved on report of the Judge, if the foregoing ruling was correct the verdict was to stand, otherwise it was to be set aside and a new trial granted.

*Fairfield*, for the plaintiff, to show that the wages and victualing of the crew constituted a proper subject for general average, cited *Hughes on Ins.* 220; *Latward* v. *Curling*, *Park*, 207; *Walden* v. *Le Roy*, 2 *Caines' Rep.* 263; *Barker* v. *Phœnix Ins. Co.* 8 *Johns.* 307; *Padelford & al.* v. *Boardman*, 4 *Mass.* 548; 4 *Dallas Rep.* 274.

2. That the foreign adjustment was not conclusive upon the plaintiff, he cited *Power* v. *Whitmore*, 4 *M. & S.* 141; *Lennox* v. *U. S. Ins. Co.* 3 *Johns. Cas.* 178; *Shiff* v. *Louisiana Ins. Co. Martin's Rep.* 629; 3 *Kent's Com.* 238; *Bonsfield* v. *Barnes*, 4 *Camp.* 228; *Hughes on Ins.* 228.

*D. Goodenow*, for the defendant, insisted that the adjustment of the general average abroad was conclusive and binding, as well upon the plaintiff as upon all the other parties to it. The Master was the agent of the owner, and procured the adjustment to be made at the proper place, and this adjustment was in accordance with the laws of that place. *Phil. on Benecke*, 268, 269; *Simonds* v. *White*, cited in 2 *B. and Cres.* 803; *Phil. on Benecke*, 279, n. *(a;)* *Strong* v. *N. Y. Fireman Ins. Co.* 11 *Johns.* 323; *Depeau* v. *Ocean Ins. Co.* 5 *Cow.* 63.

2. But if this adjustment should be opened, the wages and victualing of the crew ought not to be allowed. *Abbott on Shipping*, 275, 281, 283; *Phil. on Stevens & Benecke*, 370, 379, 382, 383; *Power* v. *Whitmore*, 4 *M. & S.* 141; *Park* 52, 81; *Da Costa* v. *Newnham*, 2 *T. R.* 407.

*E. Shepley*, replied on the part of the plaintiff.

The opinion of the Court, at the next *April Term*, was delivered by

Parris J.—The plaintiff's ship, *Mordecai*, insured by the defendants, being on a voyage from *Richmond* to *Bremen*, was compelled to put into *Cuxhaven*, an intermediate port, for the preservation of the ship, cargo, and lives of the crew. For the ship's proportion of the losses and expenses incurred in this necessary

procedure for the common benefit of ship, freight and cargo, the plaintiff claims indemnity of the insurers. This claim, to a certain extent, is admitted. But it is denied, on the part of the defendants, that in the computation of a loss like this, which falls under the character of general average, the insured can include the wages and victualing of the crew from the time the ship bore away for *Cuxhaven*, until her departure from thence for her port of destination.

There may have been some vacillation in the English Courts upon this subject, but we suppose it now to be settled law in Westminster Hall, not to include wages and provisions during the detention, in a general average loss. The case of *Power* v. *Whitmore*, 4 *Maule & Selw.* 141, and several others, are direct upon that point.

But the law has been differently settled in the American courts, and we apprehend, is now at rest upon this point, perhaps in every state in the Union, certainly in all the principal commercial states. It is stated, in *Philips on Insurance*, that the decisions of the American courts and the practice of insurers concur in allowing the wages and provisions as a part of the average loss, in case of an interruption of the voyage to refit. 1 *Phill. Ins.* 348. In the notes to *Abbot on Shipping*, by *Story*, page 350, it is said that in *America*, the rule seems definitively settled in our principal commercial states, that whatever be the nature of the injury, whether arising from a voluntary sacrifice or a mere peril of the sea, the wages and provisions of the crew from the time of putting away for the port, and every other expense necessarily incurred during the detention for the benefit of all concerned, are to become as general average ; and this position is abundantly supported by *Padelford* v. *Boardman*, 4 *Mass.* 548; *Clarke* v. *United Insurance Company*, 7 *Mass.* 365 ; *Spafford* v. *Dodge*, 14 *Mass.* 74 ; *Walden* v. *Le Roy*, 2 *Caines*, 263 ; *Barker* v. *Phœnix Insurance Company*, 8 *Johns.* 307 ; *Dunham* v. *Com. Ins. Company*, 11 *Johns.* 315.

It is desirable that decisions in relation to the law of insurance, and commercial law generally, should be similar in all the courts in this country ; and when we find a principle so well settled, and by courts of so great respectability in the most commercial states,

Thornton *v.* The United States Insurance Company.

we feel no hesitation in adopting it. For about thirty years, the courts in *New York* and *Massachusetts* have steadily and implicitly adhered to this principle, and it must have long since become familiar to the mercantile community, and their contracts are now presumed to be formed in reference thereto.

From the report in this case it appears, that on the arrival of the *Mordecai*, at *Bremen*, her port of discharge, a general average of the loss was adjusted by the proper officers there, by which two hundred and fifty rix dollars were apportioned on the cargo, and seventy rix dollars on the ship; but, in this adjustment no notice was taken by the officers, who made it, of the wages and victualing of the crew, after the ship bore away for *Cuxhaven*. The question now presented, is, whether the *Bremen* adjustment is to be taken as conclusive between the parties.

According to adjudged cases, the adjustment is conclusive between the owner of the ship and the owner of the cargo, notwithstanding the omission to include the wages and provisions as part of the average loss. The loss is to be adjusted and contribution made at the port of discharge, and according to the laws and usages there existing. The owner of the ship has a *lien* on all the goods on board, not only for the freight, but to answer all averages and contributions that may be due, and until this *lien* is discharged he may safely refuse to deliver the goods. But when the adjustment of the loss is made and the several proportions ascertained according to the usage and law of the place, the owner of the ship is bound to deliver the goods upon payment, or tender of payment, of such average portion of the loss as shall have been apportioned thereon. For the amount thus paid the insurer of the goods is liable, even if it exceed the amount of average as it would be apportioned at the home port or place where the insurance was effected. This is the principle decided in *Strong* v. *The New York Fireman Insurance Company*, 11 *Johns*. 323, and *Depau* v. *The Ocean Insurance Company*, 5 *Cowen*, 63. The ground of the decisions is, that the insured may have a complete indemnity; and although he may have been compelled to pay unconscionably, yet as he could obtain his goods in no other way, he has his remedy over against his insur-

ers for the amount thus paid. For the same reason, that is, the principle of complete indemnity and nothing more, the owner of the vessel, who has not, in order to relieve his vessel, been compelled to settle and contribute by actual payment, according to the foreign adjustment, will not be permitted to recover of his insurer, beyond his actual loss, as adjusted according to the law of the place where the assurance is effected. This is well illustrated in the editor's note to the last edition of *Stevens & Benecke on Average, page* 279. Where there has been an adjustment and contribution, the party actually contributing in order to relieve his goods from the claim of average, has been damnified to the amount so paid, and that is the measure of *his* loss, in an action between him and his insurer. But the loss of the party to whom the contribution is made, is not thus conclusively measured by the foreign adjustment. In the language of the editor above referred to, he has not been compelled actually to contribute any thing on the basis of the foreign adjustment, in order to obtain possession of his property. He has sustained a loss for which his insurers are answerable. By the average contribution from the owners of the cargo, his loss has been partially remunerated, and the insurers so far relieved ; but their liability for the residue of the loss is measured only by its actual amount. In no other mode can there be complete justice done between the insurer and the insured. By no other principle will the assured receive exact indemnity and nothing more. He resorts to his insurer with his policy. He accounts for what he has received under the foreign adjustment, and has a right to claim indemnity for the balance of his loss acording to the law of the place where the contract was entered into. We know it is often said in the books, that the foreign adjustment is conclusive. As between the parties, it unquestionably is so. The party contributing can recover nothing back ; the party to whom the contribution is made can recover nothing further, and he, who has been compelled actually to contribute on the basis of the foreign adjustment, can recover of his insurer the amount thus contributed and nothing more. To this extent we admit the conclusive character of foreign adjustments, but have been unable to find adjudged cases to carry us further. We have found no case, where the party to whom the contribu-

Thornton *v.* The United States Insurance Company.

tion has been made, has been restricted, in his claim upon his underwriters, to the sum apportioned as his share of the loss, by the foreign adjustment, when that sum fell short of a complete indemnity, according to the law of the place where the contract of assurance was entered into.

If the foreign adjustment includes, as general average, what constitutes only a partial loss or particular average, according to the authorities, the adjustment is not binding upon the underwriters, either because the loss was not covered by the policy, or not coming within the term, general average, is not to be adjusted abroad ; and we do not perceive any good reason against applying a similar rule *in favour* of the insured, in cases where, by the foreign adjustment, losses are excluded, which, by the law of the place where the contract was made, are considered as falling within general average.

The general rule is, that in the interpretation of contracts, the law and custom of the place of the contract is to govern. By the law of the place where this contract of assurance was entered into, the term, *general average,* includes the wages and provisions of the crew, and unless there be something in the contract from which it can be inferred that the parties contracted with reference to the law or usage of some other place, this construction must govern.

We readily admit the principle, that the construction of the contract may be varied by reference to the law of the place where it is to be performed, when the place of performance is different from that where the contract was entered into. But in this case, the place of execution and performance was the same, and although the amount of indebtedness might depend on and be affected by foreign laws, as they would measure the amount of contribution to be received from the owners of the cargo, yet, as the contract is one of indemnity, it must render the insurers answerable for all the loss insured against, excepting so far as the insured has been indemnified by such contribution under the foreign adjustment.

We cannot admit that the contract is to be *construed* by foreign law or foreign usage, or that we are to resort to either to

ascertain what losses are covered by it, or what is to be included in each description of loss.

The insured has sustained a loss covered by his policy. For the amount of that loss the insurers are answerable, after deducting what the assured has already received by way of average contribution, from those who were interested in the cargo, and we have not been able to perceive any sound reason for limiting his claim to the sum estimated as his loss in the foreign adjustment, when it conclusively appears that losses were excluded from that adjustment, which, by our laws, were covered by the policy and to be borne by the insurer.