## N. Y. SUPERIOR COURT.

The Knickerbocker Life Insurance Company, plaintiff and appellant, agt. Joseph B. Ecclesine, defendant and respondent.

The granting of an order of *arrest* is a matter of *discretion* for the judge granting the same. And that discretion may be reviewed, on motion at special term to vacate the order of arrest, or to reduce the amount of bail, by another judge.

A *corporation* engaged in a business, in which credit may be material to its success, may maintain an action of *libel*, without proof of special damage, where the language used concerning it is *defamatory* in itself, and injuriously and directly affects its credit and necessarily and directly occasions pecuniary injury; but in all other cases the averment and proof of malice and special damage is necessary.

Whenever a corporation is entitled to maintain an action of libel, in the cases specified, it may also procure an order for the arrest of the defendant under § 179 of the Code, as a provisional remedy in that action. In such case the word "character" contained in sub. 1 of § 179, must be construed to mean "business character."

The language complained of, by the plaintiffs, as being injurious to them, not being actionable *per se*, the averment and proof of malice and special damage was necessary. This the plaintiffs in their complaint and affidavits failed to sufficiently set forth to uphold the order of arrest.

What the complaint should charge and set forth as special damage in such an action discussed and stated.

Where the defendant moves and obtains an order to have the averment of damage at the end of each count of the complaint made more definite and certain, by setting out the names of the persons refusing to make application for insurance and the particular premiums and amount thereof, which it was claimed the company would have received, had it not been for the publication of the alleged false matter:

*Held*, that this was sufficient as an allegation in a pleading of special damage to go to the jury (Jones, J. *dissenting on this last point*)

*General Term, June,* 1869.

*Before* Monell, *P. J.* Jones *and* Freedman, *JJ.*

Appeal from order vacating order of arrest, and

Appeal from order directing the complaint to be made more definite and certain.

This was an action brought by the above-named plaintiffs against the above-named defendant, to recover $130,000, alleged damages, asserted to have been sustained by reason of divers alleged libellous publications of and concerning the plaintiffs, contained in a chart of Life Insurance Companies annually published by the defendant, and in which is embodied a brief synopsis of the annual returns of such companies organized or doing business in the state of New York, for the year ending December 31, 1867, and also in three advertisements contained in different public journals published in this city, inserted by the defendant with the view of calling the attention of the public to his said chart, for the purposes of sale, in which advertisements were embodied the essential points affecting the plaintiff's company, and claimed by them as libellous in the chart.

Upon a complaint embracing five causes of action, an affidavit of the president of plaintiff's company alleging the falsity of some of the facts stated in defendant's publications, and an affidavit of plaintiff's counsel referring to and annexing copies of correspondence had between him and the defendant prior to the suit, and also annexing the alleged libellous matter, an order of arrest was obtained from one of the judges of the court, directing the sheriff to arrest the defendant, and hold him to bail in $10,000.

The defendant moved, upon affidavits, to vacate the said order of arrest, and the motion was opposed by further affidavits. The motion was granted, the order vacated, and the following opinion delivered, from which the facts will more fully appear:

FREEDMAN, *J.* (*Special Term.*) This action is brought by the plaintiff, as a corporation, against the defendant, for the recovery of $130,000 damages, alleged to have been sustained by reason of divers alleged libellous publications of and concerning the plaintiff, contained in a pamphlet (1) entitled "Life Insurance Chart," annually published by the defendant

and embodying a brief synopsis of the annual returns of Life Insurance Companies; and (2) also, in three advertisements, inserted in different public journals published in the city of New York, and inserted by the defendant with the view of calling the attention of the public to said Life Insurance Chart, and containing substantially the same statements concerning the plaintiff's company claimed by them as libellous in the chart.

Upon the complaint in this action, and an affidavit sworn to by the president of the plaintiff's company, and an affidavit sworn to by one of the attorneys of the plaintiff, an order of arrest was obtained from one of the justices of this court, and in pursuance of said order the defendant has been arrested, and compelled to give bail for his appearance in this action, consisting of two sureties, justifying in the sum of ten thousand dollars each.

The defendant moves upon affidavits made in his own behalf, and also upon the complaint and affidavits of the plaintiff, upon which the order of arrest has been granted, to vacate the order of arrest, or for a reduction of bail.

Subd. 1, of section 179, of the code, provides that a defendant may be arrested in an action for the recovery of damages, on a cause of action not arising out of contract * * where the action is for an injury to person or character, &c., &c. Section 180 prescribes that an order for the arrest of a defendant must be obtained from a judge of the court, in which the action is pending, and according to section 181 the order may be made by the judge, whenever it shall appear to the judge by the affidavit of the plaintiff, or of any other person, that a sufficient cause of action exists, and that the case is one of those mentioned in section 179.

These provisions do not give to the plaintiff an absolute right to an order of arrest; the language of the code is permissive only; the words of the code are not that the judge shall make the order, but merely that the order may be made. It therefore rests in the sound discretion of the

judge to grant or refuse the order. In *Davis* agt. *Scott*, (15 *Abb.* 127), DALY, *F. J.* says, that it is a proper exercise of that discretion to grant the order of arrest only in actions of assault, of battery, libel, or slander, where it would have been granted under the former practice, or in extreme cases of very outrageous batteries; or when it is shown by affidavit that the defendant is a non-resident; or from facts and circumstances, that there is good reason to believe that he is about to, or may, depart from the state; and at the same time that learned· jurist proves by authorities, that by the practice established in the supreme court when the revised statutes went into effect (1828) an order would not be granted for the arrest of a defendant in actions of assault and battery, libel or slander, except slander of title, unless the defendant was a transient person, or was about to depart from the state, or unless in very extreme cases of violent and cruel batteries, and shows that a strict adherence to the salutary rule referred to by him, which has prevailed in this state from an early period, is not inconsistent with the provisions of the code.

. The granting of the order of arrest in this matter was therefore a matter of discretion for the judge granting the same. The plaintiffs seem to agree to this proposition, but strenuously insist that the exercise of that discretion by one judge will not be reviewed by another.

Section 204 of the code provides that a defendant arrested may, at any time before judgment, apply on motion to vacate the order of ·arrest, or to reduce the amount of bail, and it has been well settled that the motion referred to in this section, may be made before the judge who granted the order, or to any other judge; in the latter case it belongs to the class of motions termed "non-enumerated motions," which must be made upon notice to the adverse party and which according to the rules of this court in force at the present time, should be heard at special term only. To deny to a defendant, arrested upon an order of a

judge made out of court, a hearing, and thorough investigation at special term, would indeed be a great hardship. A judge upon granting an order of arrest is only bound to see that the plaintiff presents a *prima facie* case, and if at the same time the plaintiff tenders a sufficient undertaking to the effect, that if the defendant recover judgment, the plaintiff will pay all costs that may be awarded to the defendant, and all damages which he may sustain by reason of the arrest, not exceeding a certain sum, which is to be specified in the undertaking, and which shall be at least one hundred dollars, an order of arrest under our present system of practice is often granted as a matter of course. In such case, the judge granting the order hears only one side; the plaintiff's statements may be highly colored and strained; different conclusions may be drawn from them; the judge applied to, being pressed with other business, has not the time to examine them very minutely, but grants the order in the expectation that, if the defendant is able to overcome or explain the case as made by the plaintiff he will not neglect to do so, and set himself right before the court, either upon the plaintiff's own papers, or upon new affidavits, prepared on behalf of the defendant. Nor can I subscribe to the proposition advanced by the learned counsel for the plaintiff, that the defendant, by giving bail, has precluded himself from questioning the sufficiency of the plaintiff's complaint, and original affidavits, to sustain the order. The case of *Stewart* agt. *Howard* (15 *Barb.* 26), cited in support of this theory, simply decides that a person arrested in civil process waives his *personal* privilege from arrest as a witness by giving bail, and the case of *Dale* agt. *Radcliffe* (25 *Barb.* 333) is not in point now, for the reason that, at the time of the decision made in that case, a defendant arrested under the provisions of the Code was compelled to move to vacate the order of arrest, before the justification of his bail. As the case now stands, he may move at any time before judgment, and section 183 provides further, that an order of arrest shall be of no avail, and shall be vacated

or set aside on motion, unless the same is served upon the defendant, as provided by law, before the docketing of any judgment in the action; and that, in all cases, the defendant shall have twenty days after the service of the order of arrest, in which to answer the complaint in the action, and to move to vacate the order of arrest, or to reduce the amount of bail.

Having thus disposed of some of the most important preliminary questions raised upon the argument of this case, and passing over others, raised partly by the plaintiff and partly by the defendant, but which I do not deem of great importance, I proceed to examine the application upon the merits involved in it. On the part of the defendant, the right of the plaintiff to bring this suit as a corporation has been questioned.

The books contain but three precedents for such action by a corporation (*Trenton Ins. Co.* agt. *Perrine*, 3 *Zabriskie*, 402, *decided in New Jersey*; *Metropolitan Saloon Co.* agt. *Haukins*, 4 *Hurl. & Nor.*, 87, *decided in England*; *Shoe & Leather Bank* agt. *Thompson*, 18 *Abb.*, 413, *decided in New York*).

In all these cases the language used was defamatory. The right to bring the action was based on the damages sustained by the *property* of the companies; or to use the language of POLLOCK C. B., in the English case: "A corporation may maintain an action for libel, by which its property is injured."

"The true rule," says INGRAHAM, P. J., in *The Shoe & Leather Bank* case already referred to, "seems to be as to the power of corporations to maintain actions; that they may do so in all cases necessary for the preservation of their property and rights, and for the recovery of any damages occasioned by the wrongs of others, but not for those damages to person and character for which an individual may recover unconnected with loss or injury to property."

This being, therefore, in some respects, a new remedy, it

will not be more extensive than analogous remedies given to individuals, nay it necessarily must be more limited.    But analogies may be borrowed from the former as follows:

If the alleged libel must be defamatory as to an individual, it must be so as to a corporation.

If express malice would be necessary in the one case, it is in the other.

The necessity of an averment and the mode of averment of special damage, and the mode of proof, if necessary, in the one case, is necessary in the other.

Upon a careful consideration of the principles involved in such cases, I have come to the conclusion, that a corporation engaged in a business, in which credit may be material to its success, may maintain an action of libel, without proof of special damage, where the language used concerning it, is defamatory in itself and injuriously and directly affects its credit, and necessarily and directly occasions pecuniary injury ; but that in all other cases, the averment and proof of malice and special damage is necessary.

And, I am also of the opinion, that whenever a corporation is entitled to maintain an action of libel in the cases specified, it may also procure an order for the arrest of the defendant under section 179 of the Code, as a provisional remedy in that action.    In such case the word "character" contained in the first subdivision of section 179, must be construed to mean "business character."

It remains, therefore, to inquire whether upon the case as made by both sides sufficient grounds appear for the arrest of the defendant.    The complaint embraces five counts.    The first count sets out the following language taken from the Life Insurance Chart hereinbefore referred to as one of the libels complained of:

"Knickerbocker, stockholders are entitled to thirteen per cent. annually on capital over legal interest ; dividends declared to policy holders the sixth year, and annually thereafter."

The second count sets out the same language, and the following passage as an additional libel:

"Knickerbocker dividends when applied on—life sixth year—endowment sixth year—ten years—sixth year."

In the third, fourth and fifth counts, the plaintiff complains of the following passage appearing in the advertisement inserted by the defendant into three public journals published in the city ot New York:

"Knickerbocker, 161 Broadway, New York. Stockholders are entitled to twenty per cent. of the profits, besides an interest dividend on the capital. * * * * Interest and profit, dividends paid to stockholders on $100,000 00 capital from 1853 to 1867, $139,310 75-100."

The plaintiff claims, that the defendant by the several publications aforesaid intended to charge and induce people to believe, that stockholders in said company were entitled to receive and did receive a dividend of thirteen per cent. over legal interest on the stock held by them therein, that no dividend was declared to the holders of policies issued by the company until the sixth year after the issuing of the same, whether the said policies were issued for the term of the natural life of the person insured thereby, or whether they were endowment policies, or policies having ten years to run; that stockholders in said company were then entitled to receive and that they did receive therefore twenty per cent. of the profits of said company besides an interest dividend on the amount of capital stock held by them respectively, and that there had been paid to stockholders in said company from 1853 to 1867, the sum of $139,310 75 on a capital of $100,000 00.

The plaintiff further claims and alleges, that in truth and in fact, stockholders in said company were not entitled to and did not receive a dividend of thirteen per cent. annually over legal interest on their stock, that dividends were then declared to policy holders before the sixth year after their policies were issued, that stockholders in said company were not

entitled to and did not receive a dividend of twenty per cent of the profits, besides an interest dividend on the amount of capital stock held by them respectively, nor had said company paid to stockholders the sum of $139,310 75 as interest and profit, dividends on $100,000—capital from 1853 to 1867.

The plaintiff in the first, third, fourth and fifth count further charges, upon information and belief merely, that at the time of publication the true state of affairs was well known to the defendant; the second count contains no such allegation.

Each of the counts set forth in the complaint, contains a further allegation, that the defendant well knowing the premises, but intending to destroy the reputation of said plaintiff and injure its business, did compose and publish the matters complained of.

This is the only allegation contained in any of the plaintiff's papers used on this motion charging malice or an evil intent on the part of the plaintiff. The affidavits of the plaintiff do not charge the defendant with malice or any evil intent whatever, nor set out a simple fact from which the same could be inferred.

Each of the five counts embraced in the complaint, concludes with the following specification of special damage:

"That by reason of the premises a large number of persons refused to take policies of insurance issued by this plaintiff, or to make application to the plaintiff for insurance, whereby said plaintiff was injured in its reputation and business, and lost a large amount of premiums, which it would otherwise have received, and whereby it sustained large damages, &c."

None of the affidavits contain a further specification of damage, nor any facts from which the extent of the plaintiff's damage, if any, could be seen.

The president of the Knickerbocker Life Insurance Company in an affidavit sworn to on the 2d day of February, 1869, further shows, that the stockholders in said company, "prior to January 1st, 1868, had not received on an average

exceeding two per cent. annually, over legal interest on their capital stock, and that the total amount of interest and profit dividends paid to the stockholders of said company from 1853 to 1867, did not exceed $115,000 &c.

The foregoing statement contains substantially all the material facts upon which the plaintiff relies. The language complained of, not being actionable *per se,* the averment and proof of malice and special damage is necessary. This the plaintiff attempted to set forth in the complaint, which is sworn to by the president of the company, and has been used as an affidavit upon the application to obtain the order of arrest. But frequently a sworn complaint will not be alone a sufficient foundation for the order of arrest, for the reason, that although the averments may be sufficiently specific to sustain the complaint, as such, they may not be sufficiently so to sustain an order of arrest. Thus, in an action of malicious prosecution, it is enough for the complaint to set out in general terms malice and want of probable cause. But to sustain an order of arrest, this is not enough. The facts relied on as presumptive evidence of want of probable cause, must be set forth in the affidavit, so as to enable the judge to whom the application is made, to draw the proper conclusions of law. If such facts are omitted, the party swears only to his own belief, and thus his own opinion, or that of his counsel is substituted for a judicial decision (*Vanderpoel* agt. *Kissam,* 4, *Sandf.,* 715).

In the same manner it is necessary in this case, that the complaint in this action should not only charge, that at the time of publication the true state of affairs was well known to the defendant, (and this is done merely upon information and belief), that the defendant intending to destroy the reputation of the plaintiff, and injure its business, did compose and publish the matters complained of, and that the plaintiff sustained the damages alleged therein; but that the affidavits of the plaintiff should contain sufficient facts, from which the judge or court can see that the defendant must have

known the true state of affairs, that he was actuated by malice in making the publication, and that the plaintiff suffered damage in consequence thereof. This the plaintiff did not do, although his counsel seems to have been fully aware of the necessity thereof; for an affidavit was attached to the verified complaint, sworn to by the president of the Knickerbocker Life Insurance Company on the same day the complaint was verified, in which the president swears that he has read the complaint in this action and knows the contents thereof, and then goes on and confines himself to show in what respects the publications of the defendant were false, but wholly omits to swear that the allegations contained in the complaint are true. The same omission occurs in the affidavits read by the plaintiff in opposition to the motion to vacate the order of arrest, so that upon the plaintiff's own papers I am asked to uphold the order of arrest upon the bare fact of the publication of a statement not defamatory in itself, the falsity of the same in some particulars, and an allegation of damage, the extent of which, if any occured, I cannot ascertain. As the words complained of are not libellous on their face, the plaintiff is bound to show by facts and circumstances, how they became libellous, and that the defendant, at the time of their publication, knew their libellous character. Presumption of malice can only arise when the publication, on its face, is capable of conveying an injurious effect. Every man is presumed to foresee and intend all the mischievous consequences that may justly be expected to flow from his voluntary acts. But the cases of constructive malice are exclusively such as involve words capable of bearing in themselves a libellous meaning. The law in such cases reasonably presumes no more than this, and when a hidden defamatory meaning is sought to be attributed to words in themselves innocent, and on their face containing no such sense, by extrinsic facts outside and independent of the publication itself, the knowledge of such facts must be

shown by averment and proof to have existed in the breast of the defendant at the time of publication.

The words complained of do not necessarily imply even a charge of mere mismanagement against the company or its officers; on the contrary, as long as the press and the public remain divided in opinion as to the best plan upon which life insurance companies should be organized and carried on, the statements published by the defendant concerning the plaintiff, may be looked upon by many as highly eulogistic of the safe and prudent manner in which the affairs of the plaintiff's company have been heretofore conducted; they may with many people amount to a positive recommendation, for they certainly tend to demonstrate that, so far, the plaintiff's company has been very careful in assuming risks, and fortunate besides. The words being capable of this interpretation, the burden of proof is upon the plaintiff to show by facts and circumstances that they were used in a libellous sense, and that the defendant was actuated by malice. The plaintiff has failed to do so.

The defendant, on the other hand, shows by affidavit, that he has been for over fifteen years past a resident of the city of New York, that he is a man of family, has been a taxpayer on personal estate in the said city for several years, and that he has no intention to leave the same, or remove therefrom; that he was, from 1859 to 1868, one of the editors and proprietors of a monthly journal, called the "Wall Street Underwriter and General Joint Stock Register," published in this city; that he has been, since September, 1868, the sole editor and proprietor of said publication; that in the pursuit of his business, he frequently had occasion to, and continually does, give to the public statistical information of the state and condition, pecuniarily or otherwise, of the insurance companies of this and other states, devoted to the life, fire, or marine business; that the pamphlet referred to by the plaintiff as "The Life Insurance Chart," containing the matters complainee of in the first and second causes of

action, is a fair and truthful compilation, gotten up by him from extracts from the original verified statements, filed in the N. Y. Insurance Department of 44 Life Insurance companies in the United States, and was not a publication directed at the Knickerbocker in particular, any more than at the other forty three companies named in it. The defendant then goes on, and shows how he compiled the facts published in said chart, and in the advertisements complained of in the third, fourth, and fifth cause of action; that at the time of the publication he had every reason to believe, and did believe, they were true; that the publication was made with good motives and for justifiable ends; and, finally, concludes by showing how, in some particulars, he was misled partly by the returns and statements, and charter of the plaintiff's company, and partly by statements contained in the ninth annual report of the superintendent of the insurance department of this state, as printed by order of the legislature for the year 1868; that he is a policy-holder in the plaintiff's company since the year 1857, that said policy is on his own life, in favor of his wife, for the sum of $3000, and that, several years ago, he induced other persons to insure in plaintiff's company.

The defendant thus not only denies all the allegations of the plaintiff, so far as it may become necessary for him to deny them; but, in addition thereto, he presents facts and circumstances which stand forth uncontradicted, and which, as the case stands before me, almost conclusively prove that no such malice or evil intent towards the plaintiff, as has been charged against him, ever existed in point of fact. The defendant shows that he made the statements complained of in the course of his business, believing them to be true, and that they contain no libel; for a libel consists of a malicious publication. After carefully sifting and duly weighing the evidence placed before me by both sides, I can come to no other conclusion, and I think the defendant is entitled to his discharge. If the rule in a case, like the one before me, were

otherwise, no newspaper could give to the public statistical information relating to any corporation or company, without becoming involved in endless litigation ; the slightest inaccuracy, to which the ingenuity ·of counsel could attach an injurious meaning in the remotest degree, would be seized upon and used as the foundation for a long libel suit, and a portion of our press might thus be deterred, in order to escape the annoyance, trouble, and expense, in this respect, from giving to the public such general information concerning the organization, inside workings, operations and profits of large and wealthy corporations and companies, relying for their support mostly upon popular favor and the patronage of the working classes, which the people at large have a right to demand, and which they cannot very well receive through any other channel except a free, fearless, and independent press.

The order of arrest must be vacated, with $10 costs.

An order to that effect was entered, and from that plaintiff appealed.

Defendant, subsequently moved to have the averment of damage, at the end of each count, made more definite and certain.   The motion was granted, and an order made directing the complaint to be made more definite and certain, by setting out the names of the persons refusing to make application for insurance, the particular premiums and amounts thereof which it was claimed the company would have received, had it not been for the publication of the alleged false matter.

From this order also the plaintiff appealed.

H. W. JOHNSON, *for appellant.*

A. J. VANDERPOEL, JOHN K. PORTER, THOMAS DARLINGTON, *of counsel.*

ALEXANDER & GREEN, *for respondent.*

D. McMAHON, H. A. CRAM, *of counsel.*

*By the Court,* MONELL, J.—I think, both orders should be affirmed; the order discharging the arrest for the very satisfactory reasons stated by the learned justice at special term, and the other for the reason that if the averment of special damage is made definite in the particulars specified in the order, there will be a *prima facie* cause of action against the defendant. We all agree, that without proof of special damage, the action cannot be maintained, in other words, we agree that with proof of special damage it may be maintained. As an allegation in a pleading, I think it would be sufficient, if it contained the matter required by the order, and that, it seems to me, is the only question before us on this appeal. The matter alleged against the defendant is not *per se* libelous; but if the plaintiffs can satisfy a jury, that such matter is injurious to them, and was maliciously published, they can recover if they also show, that they have been specially damaged.

FREEDMAN, *J.,* concurred.

JONES, *J.,* (concurring as to one and dissenting as to the other order).

If this action is sustainable at all it must be on the ground, that special damage has resulted from the writing of the words; special damage then is the gist of the action. Being so, it must be laid in the complaint with particularity. A general averment of loss of customers will not suffice. The names of the customers who are alleged to have been lost must be given, and only the loss of the customers so named can be proved. If no customers are named, then no proof of special damage can be given and the action fails. (*Starkie on Slander, vol.* 1, *p.* 441; *vol.* 2, *p.* 62; *Chitty on Pleading, vol.* 1, *p.* 399; *Saunders on Pl. & Ev. vol.* 2, *p.* 800).

This doctrine appears to have been overlooked in the case of the *Shoe and Leather Bank* agt. *Thompson,* (18 *Abb.,* 417).

In the present case, there is no sufficient averment of special damage, either in the complaint or any of the papers used in support of the order of arrest. There is, therefore, nothing to carry the case to a jury. The case then falls within that class of cases where the court will not uphold an order of arrest.

Again, the words complained of do not, of themselves, import any injury to the plaintiff, nor do they afford any presumption legal or otherwise, that their circulation is injurious. For aught that appears by the allegations of the complaint, the plaintiff's mode of business, as stated by the defendant, was more beneficial to both stockholders and policy-holders than that of any other company. Therefore, it does not appear, that the words could or did injuriously affect the plaintiffs business by deterring customers.

Consequently, an allegation that there were other companies who did business on a more favorable basis, is material.

The averment of special damage does not supply the want of such allegation, because the facts alleged do not show such damages to be the direct and legitimate result from the words used.

If, however, the special averment does supply the want of such allegation, it is then clear, that the special damages constitute the gist of the action.

For these reasons, I think, the order vacating the order of arrest should be affirmed, with $10 costs.

With regard to the motion to make the complaint more definite and certain, the above views call for a reversal.

That motion is applicable only when one or more of the allegations which go to make out the cause of action is or are indefinite or uncertain. But it cannot be resorted to to compel the insertion of an averment which is necessary to make out the cause of action, or which changes the cause of action which the plaintiff insists on, or the grounds thereof on which he chooses to rely.

Now, in this case there is no averment of special damage, and none can be proved (*Herrick* agt. *Yatham*, 10 *J. R.*, 281).

If the plaintiff succeeds under his present complaint, it must be on the ground that the words are actionable *per se.* True, I think, he cannot succeed on that ground. But he has a right to differ from me, and place his cause of action on that ground alone, and we cannot compel him to add another ground, nor to claim special damages, if he does not desire it.

Order to make complaint more definite and certain, should be reversed, with $10 costs.

Both orders affirmed, with costs.