(68 App. Div. 128.)

### W. C. LOFTUS & CO. v. BENNETT.

(Supreme Court, Appellate Division, First Department.    January 24, 1902.)

1. LIBEL—INJURY TO CREDIT.

Defendant published of plaintiff, a corporation conducting clothing stores in various cities, that one of the stores was in the hands of the sheriff under an attachment, and that affidavits used on the motion to vacate the attachment disclosed a "remarkable condition of affairs," and a distinct charge of swindling; that a certain person had declared that the president of plaintiff had induced him to invest money in the corporation on false representations; and that counsel for the plaintiff in the attachment suit had stated in argument that the president of plaintiff had unlawfully received moneys of the corporation, and that he and his brother, in their dealings with the corporation's money, had violated the Penal Code. *Held*, that the article was libelous per se.

2. SAME—COMPLAINT—ALLEGATIONS—SPECIAL DAMAGES—EVIDENCE.

Where plaintiff, in an action for libel, claims that an article published as to an attachment issued against him was not a fair report thereof, and that it resulted in injury to his credit, evidence that his landlord sought therefor to cancel his lease, and that the electric light in plaintiff's store was discontinued, and that he was obliged to pay cash for advertisements, was inadmissible, where there was in the complaint no allegation as to such special damages.

Appeal from trial term, New York county.

Action by W. C. Loftus & Co. against James Gordon Bennett. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Flamen B. Candler, for appellant.
David McClure, for respondent.

PATTERSON, J.　The judgment in this action must be reversed for the improper allowance, under objection and exception of proof of special damage. The action was brought to recover damages for a libel contained in an issue of a newspaper of which the defendant was the proprietor. That the defamatory matter contained therein was libelous per se is clear. The plaintiff corporation was the proprietor of several stores in which it conducted the business of clothiers in the city of New York and elsewhere. An attachment had been issued against it, and the sheriff had made a levy upon property in one of its stores. A motion had been made to vacate the attachment. The defendant published an article relating to that subject, and in it, among other things, stated that the plaintiff, a clothing firm, with a dozen stores in this and other cities, was in the hands of the sheriff; that an attachment had been procured against the plaintiff, and a motion had been made to vacate it; and that the affidavits used upon the motion disclosed a remarkable condition of affairs of the company; and a distinct charge of swindling. The attachment had in fact been procured, but property was levied upon in but one of the plaintiff's stores. The article proceeded to state that one Lysaght had declared that Thomas J. Loftus, the president of the company, had induced him to invest money in the plaintiff corporation upon false representations as to the stock of merchandise the corporation had on hand; and the article also stated that counsel for the plaintiff in the attachment suit had said in argument that the president of the corporation had received, wrongfully and unlawfully, certain moneys of the corporation, and that the president and his brother, by reason of the peculiar relations in which they stood to the corporation, had been violators of the Penal Code in their dealings with the corporation's money. The plaintiff's claim is that the publication was not a fair and true report of a judicial proceeding; that the sheriff did not hold the Loftus stores as stated in the headlines of the article published by the defendant; that the Lysaght statement was not made until after the argument of the motion to vacate the attachment, and was not used before the court on such application, and said statement or affidavit did not form a part of the judicial proceedings on the application to vacate the attachment; and that counsel for the plaintiff did not make the argument set forth in the article. The defendant in its answer attempted to justify, and alleged that the words in the headlines regarding the sheriff's levy upon the Loftus stores were true; that the portion of the article relating to Lysaght's statement was a fair report of a judicial proceeding, and published without malice; and that the reference to the statements made in argument related to the cause, and were a lawful publication.

On the evidence in the case, and upon the finding of the jury upon the issues, the plaintiff was entitled to a recovery for general damages, and, under the allegations of the complaint, some evidence of special damage may have been admissible. That the plaintiff sought to recover both for general and special damage is evident. The complaint contains the following allegation:

"By reason of said publication plaintiff has been injured in its business, reputation, prospects, and credit in general damages in the sum of twenty-

five thousand dollars;. and has also suffered·special damages, in special ways, in the sum of twenty-five thousand dollars. Said special damage has been caused by plaintiff's inability to obtain credit on the purchase of goods; ·loss of trade, plaintiff's business having fallen off by reason of said publication, customers refusing to make deposits when ordering goods which plaintiff would not make without such deposit, and in that way the business of such prospective customers has been lost; loss of services of agents in various parts of the United States, who refused to continue in plaintiff's employ after the publication of said article, whereby plaintiff was unrepresented in the trade, and unable to effect sales of the goods in the territory usually covered by said agents."

Testimony was allowed on the trial concerning the loss of customers, and it is claimed by the appellant that that testimony was improperly admitted, because the names of the customers were not mentioned in the complaint in connection with the allegation of special damage arising from that cause. It has been frequently decided in the courts of this state, following the ordinary common-law rule, that when, in an action for slander or libel, special damage arising from the loss of customers is claimed, the names of such customers must be stated in the declaration, and that the plaintiff cannot prove that any one not named therein ceased to deal with him. Hartley v. Herring, 8 Term. R. 130; Hallock v. Miller, 2 Barb. 630; Linden v. Graham, 1 Duer, 672; Tobias v. Harland, 4 Wend. 537; Insurance Co. v. Ecclesine, 42 How. Prac. 215. The rulings in the cases cited seem to have been modified by what was decided in Bergmann v. Jones, 94 N. Y. 59, although it is to be said that in that case prominence is given to the fact that the objection that the names were not stated in the complaint was not specifically taken. But whether it was error to admit evidence as to loss of customers we need not decide; for it is apparent that errors were committed in the allowance under objection and exception of evidence concerning other items of what clearly constitute special, as distinguished from general, damages. General damages are such as the law implies or presumes to have accrued from the wrong complained of. "Special damages are such as really took place, and are not implied by law, and are either superadded to general damages arising from an act injurious in itself, as where some special loss arises from uttering the slanderous words actionable in themselves, or are such as arise from an act indifferent and not actionable in itself, but injurious only in its consequences, as where words become actionable by reason of special damage." Chit. Pl. 385. In Dumont v. Smith, 4 Denio, 322, this definition of Chitty's is textually adopted in the opinion of the court by Jewett, J. In actions where the words, statements, or defamatory matter, are actionable per se, evidence of special damage may be given in enhancement of damages, provided the special damage is pleaded, but not otherwise (Shipman v. Burrows, 1 Hall, 442; Herrick v. Lapham, 10 Johns. 281; Bell v. Publishing Ass'n, 3 Abb. N. C. 157); and in Bergmann v. Jones, supra, which was an action upon a publication libelous per se, the court remarked that there could be no serious question that the person injured has the right to recover special damages, where a claim for the same is properly made in the complaint.

In the case before us, the pleader in drawing the complaint claimed both for general and special damage, and very properly incorporated various items constituting the special damage, thereby advising the defendant that proof would be offered of those special items; but upon the trial counsel extended the claim for special damage beyond the items set forth in the complaint, and, notwithstanding the specific objection taken by the defendant, evidence was allowed of special damage not pleaded, and which was of such a character as would necessarily make a strong impression upon the minds of the jury. Testimony was allowed to the effect that, immediately after the publication of the alleged libel in the defendant's newspaper, two or three landlords from whom the plaintiff hired stores called upon the president and general manager of the plaintiff, and said that they had seen in the newspaper that the plaintiff had failed, and that, "if we would give them what was in the store,—turn over the things,—they would release us from the lease,—something to that effect; they saw that the sheriff had us, and we would not need the store any longer, and that they would let us down easy; give them the fixtures, and they would take the store off our hands;" and that other landlords, or agents of landlords, had called upon the plaintiff's manager, and made similar propositions. It does not appear that the leases were canceled, or that the plaintiff was subjected to anything else than annoyance and impaired credit; but any testimony upon this subject, in the absence of proper pleading, was inadmissible. Again, the plaintiff was allowed, under objection and exception, to prove that the electric lights in the plaintiff's stores were discontinued. No such item of special damage was pleaded. Under specific objection and exception, a witness was allowed to testify that the Edison Company "sent a man up to 1191 Broadway, and told them to shut off the current there, and that they saw by the paper that the sheriff had our stores, and that he was not a very good payer of light bills, and they did not wish to furnish any light to the sheriff; and that same thing happened in Harlem at One Hundred and Twenty-Fifth street and Lexington avenue from the Harlem Lighting Company, and to about the same effect." The plaintiff was also permitted to prove by a witness connected with the Edison Electric Company that he saw the article headed "Sheriff Holds Loftus Stores," in the edition of the Herald of Sunday, the 6th of February, 1898, and that he, representing his company, took action in reference thereto based upon that publication, which action was that he issued an order to discontinue the service. Leaving the plaintiff's stores without light was a very serious matter, which could not fail to affect the jury. Still another witness was allowed to testify at great length concerning the effect of the publication upon the plaintiff's relation to various newspapers in which it was a large advertiser. The witness Krauss attended to the advertising of the plaintiff's business. He saw the article complained of. Prior to the appearance of the article, plaintiff's advertisements were inserted in newspapers upon credit; afterwards, it was obliged to pay cash. All these matters of special damage not having been pleaded, evidence concerning them

should not have been allowed. As to the first and second items, the objection was specifically taken; as to the third, there may be a question as to the sufficiency of the objection. But, even as to those objected to, the proof went in enhancement of damages, and the defendant had no way of meeting the evidence until it was brought to his notice at the trial. How far, in effect, the jury may have been influenced by it, we, of course, cannot say; but that it was incompetent evidence, and very prejudicial in its character, and would operate to effect the minds of the jury as matter of aggrava- tion, is plain.

We are therefore of opinion that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.