CHRISTIAN H. VOLTZ, Respondent, *v.* ABEL J. BLACKMAR, Appellant.

Where exemplary or punitive damages are claimed in an action, all the circumstances immediately connected with the transaction, tending to exhibit and explain the motive of defendant as to show upon the one side that he acted maliciously, or upon the other that he acted in the honest belief that he was justified in what he did, or acted under the impulse of sudden passion or alarm caused by plaintiff's conduct, are admissible in evidence.

In an action for assault and false imprisonment, it appeared that plaintiff was the confidential clerk and agent of defendant, having charge of his business in New York, with power of attorney authorizing him to sign and indorse checks, notes, etc. After receiving notice that his services were not required for another year, he, without defendant's knowledge, drew from the bank $4,000, on a check signed by him in defendant's name and deposited the same, receiving a certificate of deposit payable to his own order. Defendant was indebted to plaintiff at the time about $3,800, and, as the latter alleged, he drew the check to pay the sum owing him. On being advised of this, defendant went to his office in New York and demanded the money, and upon plaintiff's refusal to restore it, discharged him. Plaintiff thereupon took from the safe the certificate of deposit and certain negotiable warehouse receipts belonging to defendant, and, without the knowledge of the latter, carried them away. Defendant, being advised of the fact, sent for an officer, and on plaintiff's return and refusal to surrender the papers, the arrest complained of was made. The court was requested to charge the jury that there was no justification for plaintiff's possession of the warehouse receipt, to which the court responded: " The private rights of these parties are not before the jury." *Held*, error; that the charge requested should have been given, and the proposition stated was erroneous; that the facts were proper to be taken into consideration as bearing upon defendant's motive.

Also, *held*, that the act of plaintiff in drawing the money was unauthorized and unjustifiable; that the power of attorney gave him no authority to adjust his account or to draw defendant's money to pay a debt due to

himself. An agent cannot act in matters touching his agency so as to bind his principal where he has himself an adverse interest.

(Argued February 24. 1876; decided March 21, 1876.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department affirming a judgment in favor of plaintiff, entered upon a verdict, and affirming an order denying a motion for a new trial.

This action was for assault and battery and false imprisonment. The defendant was a dealer in malt, residing and doing business in the city of Buffalo, and during the years 1872 and 1873 maintained an office at No. 17 Moore street, in the city of New York. On August 20, 1872, he hired the plaintiff as confidential clerk and agent, he taking charge of the New York business for the balance of August, and then one year from the 1st of September, 1872, for the salary of $2,500 per year. Defendant executed a power of attorney, authorizing the plaintiff to sign checks, indorse checks, notes, drafts and bill of exchange; also to accept drafts and bills of exchange.

Prior to September 1, 1873, defendant wrote to plaintiff to the effect that he was doubtful whether he would require his services another year, but requesting him to remain until September 15. Plaintiff continued until September 6, 1873. On that day he drew a check on the bank where the defendant deposited, upon defendant's account, for $4,000, and immediately went to the bank and procured a certificate of deposit for that amount in his own name. Defendant at that time owed him $3,000 on a note for borrowed money and about $800 on account.

On the same day the defendant arrived in New York city he notified the plaintiff that he was discharged from his employment, and told him to leave. He also demanded the return of the $4,000. The plaintiff refused to return it. Then plaintiff went to the defendant's safe in the office without his knowledge and took from it an envelope containing, among other things, three warehouse receipts running to the

defendant representing 34,000 or 35,000 bushels of malt, and the certificate of deposit, and took and carried them away with him.

When the defendant learned that these papers had been taken, he went to the plaintiff and asked him to return them. He refused to do so. Defendant then sent for a policeman. Then two came, and after hearing the stories of the parties, requested plaintiff and defendant to go with them, and the arrest was made, which was the ground of the action.

Further facts appear in the opinion.

*Wm. H. Gurney* and *John T. Hoffman* for the appellant. The court erred in refusing to strike out plaintiff's evidence as to the reason for writing certain letters. (*Terpenning* v. *Com. Ex. Ins. Co.*, 43 N. Y., 281; *Cook* v. *People*, 2 N. Y. S. C. R., 404; *Clark* v. *Baird*, 9 N. Y., 183.) The court erred in charging that the private rights of the parties were not before the jury. (*Green* v. *White*, 37 N. Y., 405; *Thacher* v. *Jones*, 31 Me., 528; 21 Wend., 354; 3 Hill, 194.) Only compensatory damages should be allowed. (*Dain* v. *Wyckoff*, 7 N. Y., 193; *Walrath* v. *Redfield*, 11 Barb., 368; *Hoyt* v. *Gelston*, 13 J. R., 141, 151; *Sprague* v. *Eccleston*, 1 Lans., 74; *Townsend* v. *N. Y. C. and H. R. R. R. Co.*, 10 Alb. L. J., 412; *Covert* v. *Gray*, 34 How., 450; *Cowden* v. *Wright*, 24 Wend., 429.) If defendant believed a felony had been committed, he was justified in having the arrest made. (*Burns* v. *Erben*, 40 N. Y., 463; *Hawley* v. *Rutter*, 54 Barb., 490; 26 How., 273.) Plaintiff was clearly guilty of larceny in taking the warehouse receipts. (2 Bouv. L. D., 10; 3 R. S., 954, § 65; 8 C. & P., 291; 9 id., 365; 2 East P. C. Cr., 556–617; 1 C. & K., 245; Barb. Cr. L., 157–159; *People* v. *Anderson*, 14 J. R., 294; *People* v. *McGarren*, 17 Wend., 460; *People* v. *Hall*, 1 Den., 120; 2 R. S., 699, §§ 66, 67.) Exemplary or vindictive damages could not be allowed. (7 N. Y., 193; 1 Lans., 74; *Fry* v. *Bennett*, 4 Duer, 263; *Crow* v. *Schoonmacher*, 3 Barb., 657; Sedgw. on Dam. [3d ed.], 480; *Austin* v. *Wilson*, 4 Cush., 273; *Shawe's Case*, 5

Rep., 61; *Cook* v. *Ellis*, 6 Hill, 466; *Cole* v. *Tucker*, 6 Tex., 268; *McCall* v. *McDowell*, 1 Abb. [N. S.], 212; 12 Barb., 495; *Brown* v. *Chadsey*, 33 id., 253; *Ellsworth* v. *Potter*, 41 Vt., 685; *Callahan* v. *Caffarata*, 30 Mo., 136.) The verdict was so excessive that it should have been set aside. (Sedgw. on Dam. [3d ed.], 643; *Tinney* v. *N. J. Steamb. Co.*, 5 Lans., 507; *Townsend* v. *N. Y. C. and H. R. R. R. Co.*, 10 Alb. L. J., 412; *Renck* v. *McGregor*, 3 Vroom [N. J.], 70; *Kinsley* v. *Wallace*, 36 Cal., 462; *Finck* v. *Brown*, 13 Wend., 601; *Harris* v. *Panama R. R. Co.*, 5 Bosw., 313; *Murray* v. *H. R. R. R. Co.*, 47 Barb., 196; *McConnell* v. *Hampton*, 12 J. R., 234; *Ingerson* v. *Miller*, 47 Barb., 47; *Potter* v. *Thompson*, 22 id., 87; *People* v. *N. Y. C. R. R. Co.*, 22 N. Y., 418; 4 Keyes, 330.)

*Asher P. Nichols* for the respondent. It was proper to charge that the private rights of the parties were not before the court. (*Hawley* v. *Butler*, 54 Barb., 460; *Brown* v. *Erben*, 40 N. Y., 563; *Farnam* v. *Feeley*, 56 id., 451.) This was a proper case for exemplary damages. (*Hamilton* v. *Third Ave. R. R. Co.*, 53 N. Y., 25; Sedgw. on Dam. [6th ed.], 566.) The verdict was not excessive. (Story on Ag., § 250; Paley on Ag., 172 [Dunlap's ed.]; Theobald Prin. & Ag., 238–240; *F., L. and T. Co.* v. *Walworth*, 1 Com., 433; *Schuyler's Case*, 34 N. Y., 88; *Bennett* v. *Judson*, 21 id., 238; *Risley* v. *I., B. and W. R. R. Co.*, 1 Hun, 202; *Fowler* v. *Trull*, id., 409; *McMorris* v. *Simpson*, 21 Wend., 610; G. & W. on New Trials, 1131–1141; 3 Wait's Pr., 411; *Ogden* v. *Gibbons*, 2 South [N. J.], 518.)

ANDREWS, J. The plaintiff was arrested and imprisoned without warrant issued, and the jury have found that the arrest was instigated and directed by the defendant. The evidence on this point was conflicting, but this court is concluded by the finding of the jury upon the question. The jury have also found that no felony was committed by the plaintiff in appropriating his principal's money, or in taking

from the safe the warehouse receipts, although there is no room for question that these acts were without justification, and constituted a flagrant violation of the defendant's rights, and of the duty the plaintiff owed to his employer. But as the plaintiff's arrest and imprisonment, upon the facts found, was not justified, he was entitled to recover the damages sustained thereby.

The judge instructed the jury that they were not confined, in awarding damages, to giving compensation merely for the injury sustained by the plaintiff, but that beyond this they might award damages to any extent by way of punishment to the defendant, and as a warning to others against committing like offences. In vindictive actions, as they are sometimes termed, such as libel, assault and battery and false imprisonment, the conduct and motive of the defendant is open to inquiry, with a view to the assessment of damages; and if the defendant, in committing the wrong complained of, acted recklessly or willfully and maliciously, with a design to oppress and injure the plaintiff, the jury, in fixing the damages, may disregard the rule of compensation, and beyond that may, as a punishment to the defendant, and as a protection to society against a violation of personal rights and social order, award such additional damages as in their discretion they may deem proper. The same rule has been held to apply in the case of a willful injury to property, and in actions of tort founded upon negligence, amounting to misconduct and recklessness. (*Tillotson* v. *Cheetham,* 3 J. R., 56; *King* v. *Root,* 4 Wend., 113, *Tifft* v. *Culver,* 3 Hill, 180; *Cook* v. *Ellis,* 6 id., 466; *Burr* v. *Burr,* 7 id., 207; *Taylor* v. *Church,* 8 N. Y., 460; *Hunt* v. *Bennett,* 19 id., 174; *Millard* v. *Brown,* 35 id., 297.)

In actions for assault or for false imprisonment, the damages are, from the nature of the injury claimed, incapable of exact ascertainment. If the cause of action is made out, the plaintiff is entitled to compensation, to be ascertained by the jury, whatever may have been the motive which actuated the defendant. But it is the constant practice

Opinion of the Court, per ANDREWS, J.

in actions for assault and battery to allow the defendant, in mitigation of damages, to show that the plaintiff provoked the assault by which he was injured, and the jury are allowed to consider the provocation, if immediate, in awarding damages and in determining how much of the injury is justly attributable to the defendant. Where exemplary or punitive damages are claimed, all the circumstances immediately connected with the transaction, tending to exhibit or explain the motive of the defendant, are admissible in evidence. The plaintiff on his part may show that there was express malice, and, on the other hand, the defendant is entitled to the benefit of any circumstances tending to show that he acted under an honest belief that he was justified in doing the act complained of, or under immediate provocation, or the impulse of sudden passion or alarm, excited by the conduct of the plaintiff. The law takes notice of the frailties of human nature, and even where human life is taken by a criminal act, it distinguishes between a deliberate killing and a killing in the heat of passion, and graduates the degree of the crime and the punishment, in view of this circumstance. The facts which led to the arrest and imprisonment of the defendant, although not upon the finding of the jury justifying it, might, if the jury had been allowed to give them their full weight, have mitigated the damages awarded. The plaintiff was the confidential clerk and agent of the defendant, who resided at Buffalo, and was conducting his business of the sale of malt in the city of New York. He had been employed by the year at a fixed salary, and his employment terminated under his contract on the 1st of September, 1873. He had charge of the defendant's office in New York, and held a power of attorney to sign and indorse checks, notes, drafts and bills of exchange, and to accept drafts and bills for his principal. The defendant kept a bank account at the Fourth National Bank of New York, upon which the plaintiff drew checks in the name of his principal in the course of the business. The defendant, by letter dated the twenty-ninth of August, written at Buffalo, in response to a letter

from the plaintiff, informed him in substance that his services would not be required for another year, but expressed the desire that he would remain in New York until the fifteenth of September, and if he did not wish to remain, that he would so inform him, and he would go to New York and take charge of the office. The plaintiff remained in charge of the office until the sixth of September. On the fifth of September, without the defendant's knowledge or authority, he drew from the bank $4,000 on a check signed by him in the defendant's name, and deposited it to his own credit in the same bank, taking therefor a certificate of deposit payable to his own order. The check was drawn against funds of the defendant, and after payment of this check there remained in the bank about $1,000 to the defendant's credit. The plaintiff on the same day advised the defendant at Buffalo by telegraph, that he had drawn the check for $4,000 — "my account" — which was the first knowledge which the defendant had of the transaction. The defendant at the time was indebted to the plaintiff in the sum of about $3,800, of which $3,000, or thereabouts, was for money loaned by the plaintiff to him, and the balance for arrears of salary.

The plaintiff alleges that he drew the check to pay the sum owing him by the defendant, including in the amount, salary for the whole month of September. He at this time held a demand note of the defendant for $3,000, given for part of this indebtedness. It is not open to question that this transaction was unauthorized, and without justification. The power of attorney which the plaintiff held, gave him no authority to adjust by his sole act the account between himself and the defendant, or to draw from the bank the defendant's money to pay a debt to himself.

It is a rule which stands upon the solid basis of reason and common sense, than an agent in matters touching the agency, cannot act so as to bind his principal when he has an adverse interest in himself. The law will not permit a conflict in this way between his interest and his duty, and removes the temptation to wrong, by absolutely disabling him in such a

.case from acting for himself, and at the same time for his principal.

The power of attorney is to be construed in the light of this rule, and it authorized the plaintiff to act for the principal, and in his business with third persons, but not for himself, or in business in which the plaintiff and defendant were mutually and adversely interested. (*Claflin* v. *The Farmers and Citizens' Bank*, 25 N. Y., 293; Story on Agency, §§ 210, 211.)

The check drawn by the plaintiff included not only the debt actually due from the defendant, but salary in advance for the month of September, when there could be no pretence . of an employment beyond the fifteenth of that month.

The defendant, on receiving the telegram advising him of the drawing of the check, went to New York, reaching there on the sixth, and found the plaintiff at the office, and demanded that he should return the money, which he refused to do, and thereupon he discharged the plaintiff from his employment. The plaintiff then went to the safe in the defendant's office and took therefrom an envelope containing the certificate of deposit for $4,000, some private papers of his own, and bank vouchers, and three negotiable warehouse receipts for about 35,000 bushels of malt, worth $50,000, representing malt belonging to the defendant, held in store for him in New York, and deliverable on the production of the receipts indorsed by him. The plaintiff put these papers in his pocket and left the office. After he had gone, the defendant (as he testified), was informed by another clerk that the plaintiff had taken the receipts and papers and this was the first knowledge he had of the fact. Police officers were sent for, and the plaintiff having returned to the office, the papers were demanded of him by the defendant, and he refused to surrender them. The plaintiff testified that he offered to return them if the defendant would receipt them to him, but this is denied by the defendant. The arrest soon followed, and the plaintiff was · placed in a cell at the station-house, where he remained until the next

morning, when he was discharged by the magistrate before. whom he was brought, on the ground that the matter was of civil and not of criminal cognizance.

The evidence in the case tends to show that the defendant exhibited great anxiety to recover the possession of the warehouse receipts, and this was entirely natural. They were negotiable by his indorsement. It is quite probable that the actual authority of the plaintiff did not include a power to transfer them by indorsement in the defendant's name, although it appeared that the plaintiff bought and sold malt for the defendant. But a transfer by the plaintiff for value would subject the defendant to embarrassment, if not loss. The plaintiff testified that after he had taken the papers he said to the defendant, "I shall go to Buffalo and settle my matters," and a threat of a retention by the plaintiff of the evidence of the defendant's title to the malt may well be supposed to have excited and alarmed him.

The pretence which the plaintiff set up on the trial, of a right to the possession of the receipts and vouchers, was idle and groundless. They belonged to the defendant, and not to the plaintiff, and the defendant was entitled to their possession. Nor does it appear that the plaintiff, in procuring the money from the bank, or in taking the papers from the safe, had the excuse even that he was acting under any apprehension that his debt was insecure, nor, so far as it appears, had the defendant sought to evade its payment. The plaintiff knew that the defendant was a man of wealth, and that debts against him were collectible.

We have deemed it proper to refer to some of the facts in this somewhat extraordinary case, with a view to a proper understanding of an exception to the charge of the judge on the trial, upon which the judgment must, we think, be reversed.

The judge having charged that the jury were at liberty to give vindictive damages, was asked by the defendant's counsel to charge that "there is no justification offered in the case for the plaintiff's possession of the warehouse receipts."

The court, in response, said: "I say the private rights of these parties are not before the jury," and to this observation the defendant's counsel excepted. The request was, we think, a proper one, and the charge requested should have been given. The judge did not, in terms, refuse to charge the proposition stated, but he answered the request by a counter-proposition, which was, we think, erroneous, and the exception thereto was well taken. The facts heretofore referred to in respect to the taking of the warehouse receipts were proper to be taken into consideration by the jury, as bearing upon the motive of the defendant. Assuming, as we must, that the imprisonment of the plaintiff was illegal, the jury might very well have found extenuating circumstances, and that the defendant acted, in directing his arrest, in good faith, without malice, or under a high degree of excitement, created by the circumstances immediately preceding the arrest. What force should be given to these and like considerations it was for the jury to determine; but the charge withdrew material facts, tending to mitigate the damages, from their consideration, and for this reason the judgment should be reversed, and a new trial ordered.

All concur.

Judgment reversed.