to enable the purchasers to procure a partner with whose aid they would be able to carry out the contract. Thus Mr. Rummel says:

"When Mr. Fish called on us to inquire why we had not paid for the presses it was in the first part of October or middle of October,—a few days after the presses were in working order; it might be a week. I did not give any order to take the presses away, but only told him the circumstances,—how we were fixed,—and, if we got a partner, we should take possession of the press; and he thought he might make arrangements to leave it standing till they could take it right."

The statement by Mr. Rummel to Mr. Fish that they would take possession of the press if they got a partner is opposed to the idea that either of the parties to the conversation then supposed that the legal title to the press had been or was being transferred to the defendants.

On the authority of Adams v. Lumber Co., supra, and the cases therein cited, I think there was a question of fact in respect to the alleged waiver which entitled the plaintiff to go to the jury, and, inasmuch as its counsel expressly asked to go to the jury upon the question of whether there ever was a delivery of the press to the defendants, the denial of that request was error, for which the judgment must be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur, except HIRSCHBERG, J., taking no part.

---

(47 App. Div. 511.)

EVINS v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, Second Department. February 6, 1900.)

MALICIOUS PROSECUTION—DAMAGES—PLEADING—EVIDENCE.

Where the complaint for false imprisonment and malicious prosecution alleged no injury to business, but merely that plaintiff was "injured in his health, credit, and reputation, * * * and was prevented from transacting and performing his necessary affairs and business in the said time required to be transacted," admission of evidence that plaintiff, who was an attorney, was making a very good living up to the time of his arrest, but that afterwards his business fell off, so that he had practically none, and the allowing of the evidence to remain in, without any instruction to the jury, as the court stated that it would give, that no special damages could be given for loss of business, is error.

Goodrich, P. J., dissenting.

Appeal from trial term, Richmond county.

Action by Samuel H. Evins against the Metropolitan Street-Railway Company. From a judgment on a verdict for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Charles F. Brown (Henry A. Robinson, on the brief), for appellant. Sidney F. Rawson, for respondent.

WILLARD BARTLETT, J. The complaint sets out two causes of action; one for false imprisonment, and the other for malicious

prosecution. The allegation of damage is the same in respect to each cause of action, being in these words:

"That by reason of the acts of the defendant hereinbefore complained of this plaintiff was greatly injured in his health, credit, and reputation, and was exposed to and suffered great pain, both of body and mind, and was prevented from transacting and performing his necessary affairs and business in the said time required to be transacted; and this plaintiff has been damaged thereby in the sum of twenty-five thousand ($25,000) dollars."

The plaintiff is a young lawyer, who, as the jury have found, was wrongfully arrested and maliciously prosecuted by the agents of the defendant corporation upon a charge that he had been guilty of disorderly conduct while a passenger upon one of the defendant's cars. Upon the trial he was a witness in his own behalf, and was allowed to testify, over objection and exception, that he had been making a very good living up to the time of his arrest, but that afterwards his business fell off to such an extent that he attempted to get work by inserting an advertisement in the Law Journal, but did not succeed. He stated his recollection to be that for three weeks prior to his arrest he received about $200, but after that occurrence he got very little to do. Counsel for defendant moved to strike out all this testimony relative to the plaintiff's loss of business, whereupon plaintiff's counsel stated that he was not asking for special damages, and the trial judge remarked that there would be no attempt to ask for any, and declared that he should instruct the jury that no special damages could be given for the plaintiff's loss of business. In denying the motion to strike out, the court added:

"Plaintiff's counsel states that there is no claim made for special damages. It is simply to show the loss to his credit and reputation, and I take that on the theory that it may be evidence tending to establish loss of credit and reputation and standing, with the statement that I shall expressly charge the jury that no sum is to be awarded, if any sum is to be awarded at all, for special damages."

This assurance was overlooked when the court came to instruct the jury, for no reference whatever to the subject of special damage can be found in the charge, nor any instruction which would do away with the effect of the testimony in respect to the diminution of plaintiff's law business, to which I have referred. The evidence thus received is similar in character to proof of the loss of custom by a tradesman. It is well settled that such loss of custom cannot be shown unless it is pleaded. In Squier v. Gould, 14 Wend. 159, the defendant placed building material in the highway opposite the premises of the plaintiff, obstructing the way to his store. Testimony was admitted on the trial tending to show that customers were thereby prevented from resorting to the store. The old supreme court held that this proof was clearly inadmissible, inasmuch as the declaration contained no claim for damage on account of the loss of customers. It has sometimes been held that, in order to warrant the reception of proof that a plaintiff has been damaged by the loss of custom in his business, the names of the particular customers who have declined any longer to deal with him must be specified. Shipman v. Burrows, 1 Hall, 442. But there are many cases

to which this rule does not apply, and in which a general allegation of loss of custom, trade, or business earnings is sufficient. Thus, in Evans v. Harries, 26 Law J. Exch. 31, which was an action for slander affecting the plaintiff in his business as an innkeeper, the declaration alleged that the plaintiff had been greatly injured "in his said trade and business, and experienced and sustained sensible and material diminution and loss in the custom and profits of the said inn in his trade and business aforesaid." The plaintiff testified that he had lost business, and sold much less ale, since the slanderous words were spoken. There was a verdict for the plaintiff, and upon a motion to set aside the verdict for the improper reception of evidence it was contended that under the allegation of loss of custom the plaintiff could not properly be allowed to give in evidence the loss of any whose names were not specified in the declaration. The court of exchequer, however, refused to interfere with the verdict; thus holding, in substance, that damages might be awarded for loss of trade, caused by the wrongful acts of a defendant, under a general allegation that his business had thereby been diminished. "Suppose a biscuit maker in Regent street," said Baron Martin, "is slandered by a man saying his biscuits are poisoned, and in consequence no one enters his shop. He cannot complain of the loss of any particular customers, for he does not know them; and how hard and unjust it would be if he could not prove the fact of the loss under a general allegation of loss of custom." Proof of this kind, without any specification of the particular customers lost, was received under a general allegation of loss of custom in the case of Swain v. Schieffelin, 134 N. Y. 471, 31 N. E. 1025, 18 L. R. A. 385. In the present case, however, it is to be observed that there is no allegation that the plaintiff suffered any injury in his business or profession, or that his earnings were in any wise reduced, as a consequence of the false imprisonment and malicious prosecution of which he complains. The averment that he "was prevented from transacting and performing his necessary affairs and business in the said time required to be transacted" plainly relates merely to his enforced absence from business during the short time that the case was before the magistrate. It has no reference to any such diminution in the amount of his professional income as was attempted to be shown. The case in this respect is very much like Taylor v. Town of Monroe, 43 Conn. 36. That was an action of trespass for an injury arising out of a defect in a highway. The declaration alleged "that the plaintiff had been prevented from attending to her ordinary business." There was no statement as to the character of the business, nor was there any mention of earnings or loss of earnings. Upon the trial, for the purpose of enhancing the damages, the plaintiff endeavored to prove that she had been for many years employed in a button shop as a button maker, and accustomed in such employment to earn from $300 to $350 a year, and that she had been deprived of this earning power by reason of the accident which befell her owing to the defective condition of the defendant's road. The court held that the evidence was not intended simply to show the effect and extent of the injury, but to enhance the damages by showing the

62 N.Y.S.—32

loss of earnings in a special employment requiring some special skill and training, and to which the plaintiff has devoted many years of her life. "These damages, therefore," said Loomis, J., "were not the necessary result of the acts set out in the declaration, and could not be implied by law; but they were special damages, which, in order to prevent a surprise upon the defendant, must be particularly specified in the declaration, or the plaintiff will not be permitted to give evidence of them at the trial. This doctrine is unquestionable." See, also, Tomlinson v. Town of Derby, 43 Conn. 562.

Stanfield v. Phillips, 78 Pa. St. 73, was an action for malicious arrest, the declaration concluding with the words that "by means of the premises the said plaintiff was and is injured in his credit and circumstances, and otherwise greatly damnified," etc. Upon the trial the plaintiff proposed to show in what manner he had been injured in credit and circumstances, and to what extent. The evidence was objected to "because no special damage is averred in the declaration, because the evidence should be confined to special acts of damage, and because the matters were not elements of damage to be recovered in this action." The court overruled the objection, and allowed a witness for the plaintiff to testify, in substance, that the effect of the arrest was to completely tie the hands of the firm to which the plaintiff belonged, and compel it to suspend business; also, that the firm had to pay their legal fees, amounting to about $1,000, which trouble, however, was very little compared to their other troubles. Upon appeal to the supreme court the judgment was reversed solely on account of the error of the trial court in receiving this testimony. Mr. Justice Gordon said:

"The declaration in this case was general, and therefore only such general damages as the law would presume to flow from the illegal arrest complained of could be recovered under it. If the plaintiff desired to recover special damages, he should have set forth the cause which produced them with particularity, in order that the defendants might know with certainty what they had to meet. This rule imposes no hardship upon the plaintiff, and the enforcement of it is but a matter of justice to defendant."

The amount of the verdict rendered in this action leaves very little doubt that the jury were influenced, and probably largely influenced, by this objectionable testimony, which, indeed, tended to give them the idea that the plaintiff's law business had practically been destroyed by the wrongful conduct of the defendant's agents in causing him to be arrested and prosecuted. Whether this effect could have been prevented by the instructions which the learned trial judge evidently intended to give the jury on this subject cannot now be determined, inasmuch as the matter seems to have been wholly forgotten in the charge. The error in receiving this proof and allowing it to remain in the case is too serious to be disregarded, and, in my opinion, leaves us no option but to reverse the judgment.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur, except GOODRICH, P. J., who dissents, and HIRSCHBERG, J., who takes no part.

GOODRICH, P. J. (dissenting). I am of opinion that the judgment in this case should be affirmed, and, because the prevailing

opinion written by Mr. Justice WILLARD BARTLETT relates principally to the admission of evidence as to special damages, I am constrained to present at length the facts of the case and my views, and, as a new trial is to be ordered, to touch upon exceptions not referred to in the prevailing opinion. The plaintiff united in his complaint two causes of action; one for false imprisonment, the other for malicious prosecution. He obtained a verdict for $5,000, which the court, on motion, reduced to $3,000, and from the judgment and order denying a new trial the defendant appeals.

At the opening of the trial the defendant moved that the plaintiff elect the cause of action on which he would proceed. The motion was denied, and the defendant excepted. In Bradner v. Faulkner, 93 N. Y. 515, the joinder of these two causes of action was approved inferentially; and, under section 484 of the Code of Civil Procedure, there seems to be no question of the propriety of such joinder. The complaint sets out the false imprisonment as a first cause of action, in that the defendant wrongfully caused a police officer to seize the plaintiff, and compel him to leave a car of the defendant, on which he was a passenger, to take him through the public streets to a police station, where he was imprisoned in a cell during the remainder of the night; that the plaintiff was taken the following morning through the streets, in the custody of a police officer, to a police court, put into the prison pen, arraigned before the magistrate on a charge of disorderly conduct and of having used profane and indecent language in the car; that such charges were wrongfully preferred by the defendant; that subsequently, and after hearing witnesses, the magistrate acquitted and discharged the plaintiff; that said arrest was made without reasonable or probable cause, and without a warrant, and against the will of the plaintiff; that the plaintiff was thereby injured in his health, credit, and reputation, and prevented from transacting his affairs and business "in the said time required to be transacted." The second cause of action is for malicious prosecution, in that the defendant, contriving and maliciously intending to injure the plaintiff, and to cause him to be arrested, imprisoned, and detained in prison, falsely, wrongfully, and maliciously caused his arrest, imprisonment, and detention (setting out the facts as already stated), without any reasonable or proper cause whatever, and without a warrant, and in that said charges were falsely, maliciously, and wrongfully prosecuted and preferred against the plaintiff by the defendant. The appellant contends: (1) That the plaintiff was guilty of disorderly conduct, and that, as there was probable cause for his arrest, the complaint, for that reason, should have been dismissed; (2) that the verdict was against the weight of evidence; (3) that the verdict was excessive; (4) that there were errors in the admission and exclusion of evidence; and (5) that there were errors in the charge.

The first contention is involved in the second, and our discussion of the latter will obviate any necessity of any reference to the former. The denial of the motion to set aside the verdict as being against the weight of evidence requires an examination of the evi-

dence, which, by reason of the verdict, must be considered in the light most favorable to the plaintiff, wherever it was conflicting. The plaintiff, Evins, a lawyer, had been attending a "smoking concert" at an armory on Ninety-Fourth street, in the borough of Manhattan, and, about 2 o'clock in the morning of December 19, 1898, together with friends, boarded a closed car of the defendant proceeding down Madison avenue. Mr. Nichols, one of the companions of Evins, paid the fares of himself, Evins, and another friend. Evins, ignorant of this fact, handed the conductor a 10-cent piece. Nichols, taking notice of the fact, informed Evins that he already had paid his fare. Evins then asked the conductor to return the dime, which the conductor refused to do, but afterwards handed him a 5-cent piece, saying that was all Evins had given to him. But Evins insisted that he had given 10 cents, and demanded 5 cents more. Considerable talk between them ensued, and it may be assumed that Evins was excited and indignant, and expressed himself in a tone louder than that of ordinary conversation. The conductor went to the rear platform, where Evins followed, and the conversation was continued. About this time the car reached Eighty-Fifth street, and Evins requested the conductor to stop it, which request being refused, Evins rang the bell to stop. Immediately the conductor rang two bells, for the car to go ahead, when Evins again rang the bell to stop, and called on a policeman who was on the street to arrest the conductor, but the policeman did not respond. At Seventy-First street, Evins, seeing another policeman, again rang the bell to stop, but the policeman did not go to the car. Evins then went into the car, and took a seat, and nothing further occurred until the car stopped at Fifty-Ninth street, where some one called a policeman, who went to the car. Mr. Orsor, one of the defendant's inspectors, who had taken some part in the affair, told the policeman that he wished to make a charge against Evins, who then arose from his seat, and walked to the platform, where the conductor also said he wanted to make a charge against him. The policeman told Evins to get off the car, but testified that he had not seen him do anything disorderly, or heard any profane talk. Evins asked him if he had a warrant for his arrest, and the inspector said he would go with them, and make a complaint. Evins also stated that he wished to make a complaint against the conductor, after which the policeman arrested the plaintiff, and took the party to the station house, where Orsor made a written charge of disorderly conduct against Evins before the officer in charge, and Evins was incarcerated for the remainder of the night in a cell, which the elder Judge Peckham once described as "a very uncomfortable place, apart from its perils." McCord v. People, 46 N. Y. 470. In the morning he was taken to the police court, where the hearing was adjourned, and Evins released, on his own recognizance, for a few days. At a subsequent hearing, and after examination of witnesses, the magistrate decided:

"There is a great conflict of evidence, and I think there is not sufficient cause to believe the defendant guilty of the offense charged, and I therefore direct his discharge."

In his brief, the plaintiff's counsel states that the arrest was made under section 1458 of the consolidation act (chapter 410, Laws 1882), which provides as follows:

"Every person in said city and county shall be deemed guilty of disorderly conduct that tends to a breach of the peace, who shall in any thoroughfare or public place in said city and county * * * use any threatening, abusive or insulting behavior with intent to provoke a breach of the peace or whereby a breach of the peace may be occasioned."

The defendant's counsel, in his brief, cites chapter 186 of the Laws of 1880, which reads as follows:

"Section 1. Any person who shall by any offensive or disorderly act, or language, annoy or interfere with the passengers of any public stage, railroad car, ferry boat, or other public conveyance, or who shall disturb or offend the occupants of such stage, car, boat or conveyance, by any disorderly act, language or display, although such act, conduct or display may not amount to an assault or battery, shall be deemed guilty of a misdemeanor."

Assuming that, before the car reached Fifty-Ninth street, the plaintiff had been guilty of the disorderly conduct to which the defendant's witnesses testified, it is quite clear that the described offense constituted only a misdemeanor, and for such the plaintiff could be arrested, without a warrant, only by a peace officer in whose presence the offense was committed. The arrest at Fifty-Ninth street, without warrant, was unlawful, and was made at the request of the defendant's inspector, and in connection with his supposed duty as such. A peace officer may, without a warrant, arrest a person for a misdemeanor only when committed in his presence. Section 177, Code Cr. Proc. From the record it seems clear that at the time of the arrest of Evins at Fifty-Ninth street there was nothing in his conduct which justified an arrest. Indeed, the counsel for the defendant conceded on the argument, in answer to a question from a member of this court, that there was nothing at that time to justify the arrest, but claimed that it was justified by what happened previously. We cannot allow this claim. Kauril, the officer who made the arrest, testified: "I simply arrested that man [Evins] on that man's [Orsor's] complaint; otherwise, I know nothing about the case. * * * I had no warrant for the plaintiff's arrest." Thus it appears that Orsor, acting as the agent of the defendant, and in its behalf, caused Evin's arrest and imprisonment without warrant. Under the count for false imprisonment it was necessary only to prove the detention of Evins without any right of law.

In Burns v. Erben, 40 N. Y. 463, it was held as follows:

"The gist of such an action is an unlawful detention, and motive will be inferred so far, at least, as to sustain the action; and no evidence to disprove actual motive only bears upon the question of damages."

The opinion continues:

"This question of probable cause, or reasonable ground for suspicion, whether it arises in actions for malicious prosecution or false imprisonment, is one of law, unless the evidence out of which it arises is conflicting; in which event it is the duty of the court to instruct the jury what facts, if established, will constitute probable cause, and submit to them only the question as to such facts. Bulkeley v. Keteltas, 6 N. Y. 384."

In Ackroyd v. Ackroyd, 3 Daly, 38,—also an action for false imprisonment,—the court said:

"The material averment in the complaint is that the defendant 'unlawfully seized and arrested the plaintiff'; that of malice and want of probable cause may be treated as surplusage, or as matter merely in aggravation of damages."

In conformity with these authorities, the court, under the count for false imprisonment, submitted to the jury three questions,—whether there was an arrest; whether it was made by the defendant, through its officers and agents; and whether it was unlawful,—and, as the evidence was conflicting, the learned justice instructed them that, if the version of the plaintiff and his witnesses was believed by them, they should find a verdict for him; and, if the version of the defendant and its witnesses was believed, they should find for it.

The second count—for malicious prosecution—required further proof, viz. that the prosecution was without probable cause, that it was malicious, and that there was a determination of the proceedings in favor of the plaintiff. Here the plaintiff showed not only the making of the complaint by Orsor, the inspector, but the subsequent appearance, at the hearing, of Mr. Emmanuel, one of the general counsel of the defendant, who conducted the examination for the complainant. On this count the court again submitted the conflict of evidence to the jury. It is only where there is no dispute of fact that the court is called to decide the presence or want of probable cause as matter of law. Hazzard v. Flury, 120 N. Y. 223, 24 N. E. 194; Shipman v. Learn, 92 Hun, 558, 36 N. Y. Supp. 969. · In view of the great conflict as to the facts and circumstances which preceded the arrest, I think the court would have erred in taking this question from the jury. The burden of establishing want of probable cause rested upon the plaintiff, and, on conflicting evidence, it was for the jury to decide whether that fact had been established. Willard v. Holmes, Booth & Haydens, 142 N. Y. 492, 37 N. E. 480. Where want of probable cause is shown, malice may be inferred. Express malice need not be proved. · Garrison v. Pearce, 3 E. D. Smith, 255.

Having thus stated the facts and the course of the trial, it remains for me to consider the ground upon which my associates predicate error at the trial. This relates to the admission of evidence as to the business of the defendant. I think it is to be assumed that, as the plaintiff was a lawyer, his credit and reputation were liable to injury from an arrest, altogether regardless of any loss of business profits. The question was:

"Q. Was any change observed by you—noticed by you—in your business after this publication in the newspapers of this arrest? A. There was. (Objection overruled. Exception.)"

It should be noticed that no objection was made to this question until it had been answered, and that no grounds for the objection were stated. The examination of the plaintiff continued, as follows:

"Q. Was all this published in the newspapers? (Objected to as incompetent, irrelevant, and immaterial. Objection overruled. Exception.) By the Court:

I will receive evidence of publication for the purpose.of showing that the fact of arrest had been made public, but such evidence will not be received for the purpose of showing special damage due to publication, or as evidence of the fact of arrest. * * * A. I saw a notice of this arrest. Yes, I saw a report —what purported to be a report, at least—of the arrest in several newspapers."

These reports were read to the jury at the request of counsel for both parties, and the court again stated that they were received for the purpose of showing that the fact of the arrest was made public. The direct examination of the plaintiff further continued:

"Q. Tell us a little more about this sudden change in your business prospects? (Objected to as immaterial. Objection overruled. Exception.) A. I had been making a very good living up to that time. After that my business fell off to such an extent that I attempted to get work by inserting an advertisement in the Law Journal. I didn't succeed in getting a place. What my receipts were during these three weeks or a month just prior to my arrest and what they were afterwards I can't tell you in exact figures, but for the first three weeks my recollection is that I received cash about $200, and after that I got very little to do. Q. Was there any promised business which you failed to get after that? A. There was; at least, I can't say it was business. I had been promised a letter of introduction to a very big friend .of his, a man that has a good deal of litigation. Defendant's Counsel: There is no claim here of loss of business: 'greatly injured in his health, credit, and reputation.' I move to strike out all that he has testified to as to his loss of business as irrelevant. Plaintiff's Counsel: We are not asking for special damages. It is going to the general loss of credit and reputation. The Court: There will be no attempt here to ask for special damages. Plaintiff's Counsel: No, we have not pleaded any. The Court: I shall instruct the jury on this subject that no special damages can be given for this loss of business. (Motion to strike out denied, and defendant excepts.) Defendant's Counsel: I object to it as immaterial, irrelevant, and incompetent. No loss of business is pleaded. The Court: I deny the motion. Plaintiff's counsel states that there is no claim made for special damages. It is simply to show the loss to his credit and reputation, and I take that on the theory that it may be evidence tending to establish loss of credit and reputation and standing, with the statement that I shall expressly charge the jury no sum is to be awarded, if any sum is to be awarded at all, for special damages. Defendant's Counsel: I take my exception."

Here it will be observed that the exception was a general one as to the admission of evidence, not specifically to its admission for a limited purpose. It is true that in Erben v. Lorillard, 19 N. Y. 299, the court said that, "when illegal evidence properly excepted to has been received during a trial, it must be shown that the verdict was not affected by it, or the judgment will be reversed." The general exception to the admission of the testimony after the limitation put upon it by the court does not appear to me to be the equivalent of an exception, when there has been no limitation. It is true that the court, in charging as to damages for the false imprisonment, did not precisely repeat what it previously had said, but said:

"If you find in favor of the plaintiff, then you come to the question of damages. How much was the plaintiff injured by this false arrest or unlawful detention? What is the compensation that you can give him? If you believe from the testimony that his feelings, or nature, or sensibilities were harmed, or hurt, or injured, or his reputation or character met with a loss as the result of such arrest, you may take that into consideration, and give him such reparation therefor as money can make."

So, in regard to the count for malicious prosecution, the court said:

"If this young man, Mr. Evins, was arrested, and there was an unlawful detention of him, and he has been damaged thereby, and if there was a malicious prosecution against him, and all the elements I have stated to you existed, you should not hesitate to give him damages which are a fair compensation."

To distinguish between general damages and special damages is sometimes difficult. In an action for defamatory words, not actionable per se, special damages must be alleged and proved; otherwise where the words are actionable per se. In an action like the one at bar the plaintiff's reputation and business would seem likely to go hand in hand. Injury to the credit and reputation of any lawyer is not only a natural, but a necessary, consequence of his arrest and imprisonment for disorderly conduct, and the publicity given thereto; and this is within the allegation of the complaint that the "plaintiff was greatly injured in his health, credit, and reputation." The reason for the rule requiring the pleader to allege special damage is that the defendant may be advised thereof, and enabled to provide for his defense. 3 Sedg. Meas. Dam. § 1261. In Chit. Pl. 410, 411, it is said:

"Damages are either general or special. General damages are such as the law implies or presumes to have accrued from the wrong complained of. Special damages are such as really took place, and are not implied by law; and are * * * superadded to general damages arising from an act injurious in itself."

If I am correct in saying that damages to the credit and reputation of a professional man necessarily result from his arrest on a charge of disorderly conduct, then nothing contained in these definitions is opposed to proof of such necessary and natural results under the allegation of general damages. It seems clear to me that if the justice, at the close of the case, had specifically instructed the jury to disregard the testimony in question, and had stated that there could be no recovery for special damages under the pleadings, all possibility of question would have been removed. But, as he previously had twice stated, in the presence of the jury, the correct principle, and had limited the sphere of damages, as shown above, I cannot see that the admission of the testimony under the careful charge affected the verdict, or worked any harm to the defendant. Besides, there was no exception to the charge. Non constat but that the court believed the defendant was satisfied therewith.

This is not such a case as was condemned in Chapman v. Railway Co., 55 N. Y. 579, where the court said (page 587):

"To obviate an erroneous instruction upon a material point, it must be withdrawn in such explicit terms as to preclude the inference that the jury might have been influenced by it."

The case at bar does not come within the reasons under consideration in that case. Indeed, the opinion apparently gives the reverse of the enunciated doctrine a quasi approval; that is to say, if the defendant's counsel believed the charge erroneous, in order to make it the basis of an appeal, he should have specifically called the attention of the court to the alleged error in it. If the counsel desired the court to repeat in the charge the exclusion of all special damage, it

was his duty to ask for specific instructions on that subject. Any other course would seem unfair to a trial justice, in whose path are many pitfalls, and who may well believe that the general tenor of his charge is satisfactory to the parties, unless his attention be directed to what is likely to be made the basis of an appeal.

The defendant's counsel excepted to the refusal of the court to charge:

"There is no evidence of malice on the part of the corporation defendant, and the plaintiff cannot recover any more damages than the actual compensation for the injury."

The refusal was not error, for, within the Burns v. Erben Case, the jury could infer malice. In Voltz v. Blackmar, 64 N. Y. 440, the court said:

"The judge instructed the jury that they were not confined, in awarding damages, to giving compensation merely for the injury sustained by the plaintiff, but that beyond this they might award damages to any extent by way of punishment to the defendant, and as a warning to others against committing like offenses. In vindictive actions, as they are sometimes termed, such as libel, assault and battery, and false imprisonment, the conduct and motive of the defendant are open to inquiry, with a view to the assessment of damages; and if the defendant, in committing the wrong complained of, acted recklessly, or willfully and maliciously, with a design to oppress and injure the plaintiff, the jury, in fixing the damages, may disregard the rule of compensation, and beyond that may, as a punishment to the defendant, and as a protection to society against a violation of personal rights and social order, award such additional damages as, in their discretion, they may deem proper. * * * In actions for assault or for false imprisonment the damages are, from the nature of the injury claimed, incapable of exact ascertainment. If the cause of action is made out, the plaintiff is entitled to compensation, to be ascertained by the jury, whatever may have been the motive which actuated the defendant."

A more complicated question arises out of the following matter from the record:

"Defendant's Counsel: I ask you first to charge the jury that, if they find damages for the cause of action for malicious prosecution, they cannot find damages for false imprisonment. The Court: I decline. Defendant's Counsel: I except. I ask you to charge that, if they find damages for false imprisonment, they cannot find damages for the count on malicious prosecution. The Court: I decline. I charge the jury that they cannot find double damages in this case. They cannot find for malicious prosecution accompanying with it the arrest, and they cannot give damages for the arrest accompanying with it the malicious prosecution. Defendant's Counsel: I except to the refusal to charge as requested."

The charge was correct. The defendant's counsel seems to have lost sight of the fact that there were two causes of action and two distinct transactions. The plaintiff might recover damages for his arrest and false imprisonment up to the time the complaint was made against him by Orsor, and, in addition, damages for his detention and imprisonment on such complaint. These facts constituted a complete statement of damages under the first cause of action. Assuming that all damages under the false imprisonment count then terminated, there was a further claim for subsequent damages arising out of the alleged malicious prosecution. The two matters were separate and distinct, and the court very clearly and properly pointed out this distinction in charging the modification of the defendant's

requests that the damages on each count could not be enhanced by joinder with the other.

I think the judgment should be affirmed.